

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. AP-76,800
---

### EX PARTE ALBERTO GIRON PEREZ, Applicant

---

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 2649-CR IN THE 50TH JUDICIAL DISTRICT COURT
### FROM COTTLE COUNTY

---

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., filed a dissenting opinion. JOHNSON, J., concurred.

### O P I N I O N

In this case, we alter the parameters of the equitable doctrine of laches as it applies to bar a long-delayed application for a writ of habeas corpus. Recognizing that our current approach to laches in the habeas corpus context has imposed an unreasonably heavy burden upon the State, we now adopt a revised approach that is consistent with the Texas common-law definition of that doctrine. In doing so, we expand the definition of prejudice under the existing laches standard to incorporate all forms of prejudice so that a court may consider the

totality of the circumstances in deciding whether to hold an application barred by laches. Our revised approach is motivated by our recognition that the current laches standard is too rigid and, as a result, some applicants have been permitted to seek post-conviction relief despite excessive and unjustified delays that have prejudiced the State's ability to defend long-standing convictions. This approach has failed to account for the State's interest in finality and is incompatible with fundamental principles of fairness and equity, which must underlie any grant of habeas corpus relief. In light of our revised approach to the doctrine of laches, we remand this case to the trial court to give both Alberto Giron Perez, applicant, and the State an opportunity to present additional evidence.

## I. Background and Procedural History

Applicant was found guilty of murder, and his conviction was affirmed by the court of appeals in 1992. *Perez v. State*, No. 07–91–00225–CR (Tex. App.—Amarillo Oct. 9, 1992, no pet.). In 2011, almost twenty years later, applicant filed this application for post-conviction relief pursuant to Texas Code of Criminal Procedure Article 11.07. *See* TEX. CODE CRIM. PROC. art. 11.07. Applicant contends that he was denied the opportunity to pursue discretionary review in this Court because his appellate counsel failed to notify him of his conviction's affirmance in the court of appeals until June 1993, by which time the deadline for filing a petition for discretionary review (PDR) had passed.[1] Applicant further

---

[1]     "[A]ppellate counsel has a duty to notify the appellant of the actions of the appellate court
(continued...)

contends that appellate counsel's failure to timely notify him of his conviction's affirmance constituted ineffective assistance of counsel and that he should now be afforded the opportunity to file an out-of-time PDR. In response, the State invokes the equitable doctrine of laches and urges that applicant be barred from proceeding with his application for post-conviction relief.

The trial court's findings, which are supported by the record, show that appellate counsel did not provide applicant with notice of the court of appeals's opinion until after the deadline for filing a PDR, and that applicant had the information necessary to seek an out-of-time PDR as early as 1993 but failed to do so until almost two decades later. The trial court

---

(...continued)
[on direct appeal]." *Ex parte Jarrett*, 891 S.W.2d 935, 940 (Tex. Crim. App. 1994) (holding that appellate counsel was under obligation, in 1991, to advise applicant regarding right to seek discretionary review and to give notice of appellate court opinion), *overruled in part by Ex parte Wilson*, 956 S.W.2d 25, 26-27 (Tex. Crim. App. 1997) (reaffirming counsel's obligation to inform defendant of conviction's affirmance and right to seek discretionary review, but rejecting aspect of *Jarrett* that required counsel to express "professional judgment about possible grounds for review" and "advantages and disadvantages of further review"). Because an appellant has a right to prepare and file a pro se petition for discretionary review, denial or abridgement of this right through the "misfeasance or nonfeasance of counsel" constitutes ineffective assistance of counsel. *Id.* at 939-40. This rule stems from this Court's 1982 opinion in *Ayala v. State,* in which we stated that, "[i]f an appointed counsel deprived the client of his right to apply, pro se, for discretionary review . . . there might be a due process violation." 633 S.W.2d 526, 528 n.4 (Tex. Crim. App. 1982); *Ex parte Fontenot*, 3 S.W.3d 32, 34 (Tex. Crim. App. 1999) (recognizing *Ayala* as "seminal decision" establishing that counsel was ineffective if "through either an act of commission or omission, he caused the deprivation of [the] right" to pursue discretionary review). Thus, to the extent that counsel failed to timely inform applicant of the court of appeals's decision or failed to provide a copy of the opinion, such an omission would have rendered counsel constitutionally ineffective at the time of the conviction's affirmance in 1992. *See Fontenot*, 3 S.W.3d at 34 (holding that ineffective assistance claim based on counsel's failure to timely advise an applicant of his right to seek discretionary review "could have been reasonably formulated" under *Ayala* as early as 1982).

concluded that applicant failed to show that, absent counsel's conduct, he would have timely filed a PDR.

On the issue of laches, the trial court found that the State would be prejudiced in its ability to retry applicant if he were awarded a new trial through habeas corpus relief. This finding addressed the State's contention that it has been prejudiced as a result of applicant's filing delay "because of the passage of time as well as its inability to locate the murder weapon, key eyewitnesses to the shooting and its reasonable expectation that the faded memories of the witnesses will hamper the State's ability to present a case." The State further noted that the lead investigator in the case was retired and elderly.

The trial court also found that the State is prejudiced in its ability to respond to the application based on appellate counsel's "hazy memory of the events" related to the PDR. The trial court's finding was based on an affidavit from appellate counsel, in which he stated that, aside from his failure to timely communicate the conviction's affirmance, he had "little independent memory of the events described in applicant's writ" and had retained no records pertaining to his representation of applicant. Based on his "custom and practice," counsel stated that he would have informed applicant that he was entitled to "a first appeal as a matter of right, that a second appeal was not a matter of right and that [counsel] would not file a meritless PDR, though [applicant] could." Counsel further stated that it was his "usual practice and routine" to timely forward a copy of the court of appeals's opinion to defendants, and that he did "not remember" why applicant did not receive a copy of the

opinion or timely notice of the conviction's affirmance.

This Court ordered briefing on the issue of whether laches could be the basis to deny applicant the opportunity to file an out-of-time PDR based on the State's claim of prejudice to its ability to retry him.[2] *See Ex parte Perez*, No. AP–76,800, 2012 WL 1882234, at *1 (Tex. Crim. App. 2012) (not designated for publication). Applicant argues that this Court, in keeping with its current approach, should find a habeas application barred by laches only if the State demonstrates, among other things, precisely how an applicant's delayed filing has caused the State to be unable to respond to the allegations raised in the application. Applicant urges that the State's assertion of prejudice to its ability to re-try applicant is irrelevant to the laches inquiry and should be disregarded. The State responds by arguing that this Court should revise its current approach to laches to permit consideration of prejudice to the State's ability to retry an applicant, and further urges this Court to apply a rebuttable presumption of prejudice when an applicant's conviction is more than five years old. Although we decline to adopt a rebuttable presumption of prejudice to the State after a specified period of time, we agree with the State that the current approach to laches should be revised to afford courts greater latitude to weigh all equitable considerations in a particular case.

---

[2]      Specifically, we asked "whether the State's showing that it would be prejudiced in its ability to re-try Applicant if this Court were to grant relief on a petition for discretionary review is sufficient to invoke the doctrine of laches and deny Applicant the opportunity to file an out-of-time petition for discretionary review. If a showing of prejudice in the State's ability to re-try a case is sufficient, then under what circumstances is it required, and how may such a showing be rebutted by the applicant?" *Ex parte Perez*, No. AP–76,800, 2012 WL 1882234, at *1 (Tex. Crim. App. 2012) (not designated for publication).

## II. Application of Laches in the Post-Conviction Context

## A. This Court Has Previously Applied Federal Standard In Analyzing Laches

In *Ex parte Carrio*, this Court determined that the doctrine of laches was appropriate for application in the habeas corpus context. 992 S.W.2d 486, 487-88 (Tex. Crim. App. 1999) ("[T]he doctrine of laches is a theory which we may, and should, employ in our determination of whether to grant relief in any given 11.07 case."). The common-law doctrine of laches is defined as

> neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done.

*Id.* at 487 n.2 (citing BLACK'S LAW DICTIONARY 875 (6th ed. 1990)).[3]

In *Carrio*, we reasoned that laches could be the basis for denial of habeas relief even in the absence of an applicable statute or rule because "laches is an equitable common-law

---

[3]    In Texas, laches has been described as "an equitable remedy that prevents a plaintiff from asserting a claim due to lapse of time." *Green v. Parrack*, 974 S.W.2d 200, 204 (Tex. App.—San Antonio 1998, no pet.); *see also Regent Intl. Hotels, Ltd. v. Las Colinas Hotels Corp.,* 704 S.W.2d 101, 106 (Tex. App.—Dallas 1985, no writ) ("Generally, laches is a creature of equity. It is principally a question of whether it is inequitable to permit a claim to be enforced if the delay in asserting the claim has worked an injury to the opposing party."). The Texas common-law doctrine of laches typically requires proof by a preponderance of the evidence of two elements: unreasonable delay by the opposing party and prejudice resulting from the delay. *See, e.g., Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) ("Two essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay.") (internal citations and quotations omitted); *Gulf, Colorado, & Santa Fe Railway Co. v. McBride*, 322 S.W.2d 492, 500 (Tex. 1959) (describing laches as "unreasonable delay which has worked injury to another person"; laches must be established by preponderance of evidence).

doctrine," and habeas corpus is an equitable remedy. *See id.* at 488; *Ex parte Gaither*, 387 S.W.3d 643, 648 (Tex. Crim. App. 2012); *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (when claim "is equitable in nature, laches may be raised as a defense to its prosecution"). We found it appropriate to apply laches in the post-conviction context because "equity aids the vigilant and not those who slumber on their rights." *See Carrio*, 992 S.W.2d at 487 n.2 (internal quotations omitted). We noted that, "when [] claims are asserted after the passage of many years, attorneys for the defendant and the state have difficulty ascertaining the facts." *Id.* at 487 (citing Advisory Committee Notes, former Rule 9(a) of the Rules Governing 28 U.S.C. § 2254 Cases). We further reasoned that it would be inequitable to permit long-delayed claims to proceed because "often the defense attorney has little or no recollection as to what took place and many of the participants in the trial are dead or their whereabouts unknown. Further, the court reporter's notes may have been lost or destroyed, thus eliminating any exact record of what transpired." *Id.* at 487-88.

In holding that we would employ laches to evaluate post-conviction writs of habeas corpus, we cited favorably to the federal courts' application of laches to federal petitions for habeas corpus. *See id.* at 487-88. We explained that federal courts "have long recognized" laches in "evaluating post-conviction writs" and have "codified that doctrine in Rule 9(a) of the Rules Governing 28 U.S.C. § 2254 Cases." *See id.*; former Rule 9(a) foll. 28 U.S.C. § 2254 (West 1994); *Walters v. Scott*, 21 F.3d 683, 686 (5th Cir. 1994) (interpreting federal Rule 9(a)); *Strahan v. Blackburn*, 750 F.2d 438, 441 (5th Cir. 1985) (same). Rule 9(a) was

a statutory rule of laches that provided for dismissal of a federal petition for a writ of habeas corpus "if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition . . . ."[4]

The federal laches standard was rooted in the common-law doctrine of laches, but contained several important differences. Under the Fifth Circuit interpretation of Federal Rule 9(a), to invoke laches in response to a habeas petition, a state was required to "(1) make a *particularized* showing of prejudice, (2) show that the prejudice was *caused* by the petitioner having filed a late petition, and (3) show that the petitioner has not acted with reasonable diligence as a matter of law." *Carrio*, 992 S.W.2d at 488 (citing *Walters*, 21 F.3d at 686-87).[5] Importantly, the federal laches standard limited the type of prejudice the State

---

[4]      Federal Rule 9(a) read in its entirety,

> Delayed Petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he or she could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

*See* Former Rule 9(a) foll. 28 U.S.C. § 2254 (deleted 2004). Rule 9(a) was enacted in 1976 and governed dismissal of delayed applications for federal habeas corpus until 1996, when a strict one-year statute of limitations was enacted. *See* 28 U.S.C. § 2244(d) (one-year statute of limitations applies to all federal habeas corpus petitions).

[5]      Procedurally, under the Fifth Circuit laches standard, the State was required to initially make a "particularized showing of prejudice" with respect to the "state's ability to respond to the petition." *Strahan v. Blackburn*, 750 F.2d 438, 441 (5th Cir. 1985) (citing former Rule 9(a) foll. 28 U.S.C.§ 2254). The State was further required to demonstrate that the applicant's delay was unreasonable as a matter of law and that the resulting "prejudice was caused by the delay." *Id*. Causation in this context meant that the State bore the "burden of proving that [petitioner's] delay in filing his habeas petition caused [specific] sources of evidence to be lost." *Walters v. Scott*, 21 F.3d 683, 688 (5th Cir.

(continued...)

could show to "prejudice in its ability to respond to the allegations in the petition." *Id*.;

*Walters*, 21 F.3d at 687; *Strahan*, 750 F.2d at 441.[6] These specific requirements, imposed by

the federal courts after implementation of Rule 9(a), stood in stark contrast to the

requirements under Texas common law, which permitted a party to make a showing of

prejudice based on a "good faith change of position . . . to [its] detriment because of the

delay." *Caldwell*, 975 S.W.2d at 538 (internal citations and quotations omitted).

Although this Court, in *Carrio,* did not expressly state that it was adopting the Fifth

Circuit laches standard, that standard has, in practice, governed our approach to laches in

---

(...continued)
1994). "At a minimum, this requires the state to establish that if [petitioner] had filed his habeas petition at some earlier time, the evidence the state says it has lost would have been available." *Id*. Delay alone was inadequate and any "impact that delay may have had on a possible retrial is not to be considered." *Strahan*, 750 F.2d at 441. If the State met these requirements, only then did the burden "shift[] to the petitioner to negate prejudice or show that the delay 'is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.'" *Id.*

[6]    To  meet the requirement that it make a particularized showing of prejudice in its ability to respond to the allegations, the State could "not merely allege prejudicial facts," but was required to "offer concrete proof of the allegations." *Rideau v. Whitley*, 237 F.3d 472, 482 (5th Cir. 2000). With respect to missing witnesses or an unavailable trial judge, the State was required to show, "as a factor establishing prejudice," that "there are no other sources from which the state can obtain the requisite information." *Walters*, 21 F.3d at 688 n.18 (citing *McDonnell v. Estelle*, 666 F.2d 246, 253 (5th Cir. 1982)). And with respect to missing trial records, the State was required to show that the "substance of those records is unavailable from other sources." *Id*. at 688. Applying this standard in *Walters*, the Fifth Circuit held that the State had not met its burden of showing prejudice, notwithstanding the death of the court reporter, unavailable court records, and an affidavit from counsel stating that he had no memory of the circumstances surrounding petitioner's ineffective-assistance claim. *Id*. at 687-88 (rejecting application of laches after nine-year delay). Similarly, in *Rideau*, the Fifth Circuit held that the State had not shown adequate prejudice to its ability to respond to petitioner's claim of racially discriminatory jury selection, in spite of missing documentary evidence and unavailability of witnesses. 237 F.3d at 483 (rejecting application of laches after 30-year delay; because State failed to make adequate prima facie showing of prejudice, "unnecessary" for court to determine whether petitioner's delay was unreasonable).

subsequent post-conviction cases. *See Carrio*, 992 S.W.2d at 488; *In re Steptoe,* 132 S.W.3d 434, 435 (Tex. Crim. App. 2004) (Price, J., concurring) (noting that, although it did not expressly adopt federal laches standard, this Court in *Carrio* "relie[d] almost exclusively on Rule 9(a) and cases interpreting it"). By implicitly adopting the federal laches standard in *Carrio*, this Court has required the State to go beyond what would have been required to raise laches at common law by (1) requiring the State to make a particularized showing of prejudice[7] and (2) limiting the type of prejudice the State may show to prejudice to its ability to respond to the claims raised in an application. *See Carrio,* 992 S.W.2d at 487-88.

**B**. **Federal Laches Standard No Longer Appropriate for Texas**

This Court's adoption of the federal laches standard in *Carrio* was logically sound at the time, but the events of the decade since *Carrio* demand that we abandon that standard in favor of a more equitable approach. As we explain in three points below, those events show that federal courts no longer employ the federal laches standard we adopted; a significant

---

[7]     In adopting the term from the federal court's implementation of Rule 9, this Court did not define how the State would make "a particularized showing of prejudice" in *Carrio*. *See Ex parte Carrio*, 992 S.W.2d 486, 487-88 (Tex. Crim. App. 1999). The Fourteenth Court of Appeals described the State's burden of making such a particularized showing of prejudice as a "causal connection." *See Ex parte Wolf*, 296 S.W.3d 160, 168 (Tex. App.— Houston [14th Dist.] 2009, pet. ref'd) ("[The] record contains no evidence of a causal connection between [counsel's] alleged memory failures and Wolf's alleged failure to act with reasonable diligence as a matter of law. The State did not make a particularized showing of prejudice to its ability to respond to the allegations."). The term "particularized prejudice" as used in the context of speedy-trial complaints means that a party must prove with specificity how the complained-of delay has actually impacted him. *See Dokter v. State*, 281 S.W.3d 152, 160 (Tex. App.— Texarkana 2009, no pet.). For example, courts assessing speedy-trial complaints have required a defendant to show more than the fact that the State's delay caused witnesses to be missing; a defendant must additionally show the materiality of the missing testimony and establish how the absence of such testimony would impact his defense. *Prihoda v. State*, 352 S.W.3d 796, 806 (Tex. App. — San Antonio 2011, pet. ref'd).

number of other jurisdictions have rejected that standard; and that standard, as applied in Texas, has proven too rigid to effectively serve as an equitable standard.

First, the federal laches standard is no longer good law. Several years prior to this Court's adoption of the federal standard, Congress enacted a strict one-year limitations period for federal habeas corpus that has now obviated the need for the laches doctrine in that context. *See* 28 U.S.C. § 2244(d); Pub. L. 104-132, 110 Stat. 1217, 1220 (Apr. 24, 1996). The enactment of a one-year limitations period was, in part, a congressional reaction to the failure of the federal courts to effectively employ equitable doctrines, such as laches, to bar applicants from seeking habeas corpus relief after lengthy delays. *See Steptoe*, 132 S.W.3d at 440-44 (Cochran, J., dissenting) (stating it was possible that "federal courts' failure to apply Rule 9(a) with greater appreciation for the jurisprudential concerns over a flood of stale, meritless writs in the federal courts was partially responsible for what many think was the draconian solution of an absolute statute-of-limitations bar"). The legislative history surrounding the one-year federal limitations period reveals that the statute was enacted to address "the abuse of habeas corpus that results from delayed and repetitive filings" and to "curb the lengthy delays in filing that now often occur . . . while preserving the availability of review when a prisoner diligently pursues state remedies and applies for federal habeas review in a timely manner." *See* H.R. Rpt. No. 104-23, at 9 (1995). Although the federal courts no longer employ the Rule 9(a) laches standard in light of Congress's enactment of a more restrictive one-year limitations period, this Court has continued to apply the federal standard whenever the State raises laches in a post-conviction case.

Second, other states have rejected the federal standard as not current, too narrow, and overly rigid. For example, California rejected the federal standard because it found that standard was "neither current nor controlling." *See In re Douglas*, 132 Cal. Rptr. 3d 582, 588 (Cal. App. 4th Dist. 2011) (holding that federal standard "is neither current nor controlling" and that court would instead apply "a broader conception of laches used in California") (citing *In re Clark*, 855 P.2d 729, 765 (Cal. 1993)). Similarly, Oklahoma has expressly disavowed reliance on the federal standard. *See Thomas v. State*, 903 P.2d 328, 332 (Okla. Crim. App. 1995) (federal actual prejudice standard "not the law in Oklahoma"; applicability of laches "necessarily turns on the facts of each particular case"); *Paxton v. State*, 903 P.2d 325, 327 (Okla. Crim. App. 1995) (noting that federal requirement that state "demonstrate actual prejudice . . . before the doctrine of laches may be triggered is not the law in Oklahoma and we decline to adopt any such requirement"). And Georgia and Kansas have, too. *See Flint v. State*, 701 S.E.2d 174, 176 (Ga. 2010) (Federal rule "no longer extant" in light of federal limitations period; federal cases interpreting Rule 9(a) not controlling in Georgia); *Roach v. State*, 7 P.3d 319, 323 (Kan. App. 2000) (Rule 9(a) "held not to be applicable to state habeas proceedings" in Kansas). Although many states have rejected the federal laches standard in favor of other approaches, including restrictive statutes of limitation, this Court has continued to apply that standard.[8]

---

[8]    Over half of all states now employ statutes of limitation for state post-conviction relief, thus making the equitable doctrine of laches largely inapplicable in those states. *See, e.g.*, ALA. RULE CRIM. PROC. 32.2(c) (Alabama, one-year statute of limitations); ALASKA STAT. § 12.72.020 (Alaska, 18 months); FL. R. CRIM. PROC. 3.850 (Florida, two years); GA. CODE ANN. 9-14-42 (Georgia, four

(continued...)

Third, the federal standard has proven too rigid to serve effectively as an equitable standard. Federal courts found that, under their restrictive interpretation of Rule 9(a), the State faced an almost impossible burden to establish laches, even when an applicant's delay was "extreme." *See, e.g., Smith v. Jones*, 256 F.3d 1135, 1143 n.8 (11th Cir. 2001) ("Our decisions indicate that laches rarely applies even where the delay in filing a petition has been extreme"); *Rideau v. Whitley*, 237 F.3d 472, 478 (5th Cir. 2000) ("[L]apses of time that affect the state's ability [to respond], but that do not make it 'virtually impossible' for the state to respond, [do not] require dismissal" for laches) (internal quotation omitted); *Walters*, 21 F.3d at 686 (state seeking dismissal of habeas petition under Rule 9(a) faces "heavy burden").[9] Under the federal standard, the State's burden has been impossibly high primarily due to the requirement that the State make a particularized showing of prejudice to its ability to respond to the application. *See Ex parte Wolf*, 296 S.W.3d 160, 167 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (State bears burden of proving "particularized prejudice" to its ability to respond to allegations in habeas application). The particularized prejudice standard has been

---

(...continued)
years); IDAHO CODE § 19-4902(A) (Idaho, one year); ILL. CODE CRIM. PROC. ART. 122 (Illinois, three years); KAN. STAT. 60–1507 (Kansas, one year); MD. CODE CRIM. PROC. § 7–103 (Maryland, ten years); NEV. REV. STAT. § 34.726(1) (Nevada, one year); TENN. CODE ANN. § 40-30-102(b) (Tennessee, one year); REV. CODE WASH. § 10.73.090 (Washington, one year).

[9] As a result of the difficulties inherent in meeting the former federal laches standard, applicants were frequently permitted to seek federal habeas relief even after lengthy delays. *See, e.g, Bedford v. Attorney General of Alabama*, 934 F.2d 295, 299-300 (11th Cir. 1991) (applying federal laches doctrine, finding no laches after 19-year filing delay); *Campas v. Zimmerman*, 876 F.2d 318, 324 (3d Cir. 1989) (same, regarding 17-year delay); *Hannon v. Maschner*, 845 F.2d 1553, 1557 (10th Cir. 1988) (same, regarding 25-year delay); *Buchanon v. Mintzes*, 734 F.2d 274, 281-82 (6th Cir. 1984) (same, regarding 23-year delay); *Sutton v. Lash*, 576 F.2d 738, 744 (7th Cir. 1978) (same, regarding 21-year delay).

interpreted to require the State to demonstrate a complete inability to respond to the application. *Steptoe*, 132 S.W.3d at 435 (Price, J., concurring) (for laches to apply, State must show that it is "unable to respond to the merits of the claim"). Because the federal laches standard has imposed an almost impossible burden of proof on the State, even in cases of excessive delay by applicants, that standard has been ineffective at weeding out stale claims in Texas post-conviction cases[10] and has prevented courts from taking into account the full range of relevant equitable considerations.

As shown by the events of the decade since this Court decided *Carrio*, the federal standard that we adopted has been abandoned by the federal courts and a significant number of state courts, and has strayed far from the common-law understanding of laches by establishing a burden of proof that has been nearly impossible for the State to satisfy. We,

---

[10] We cite the following unpublished cases as examples, recognizing that they are non-binding and non-precedential. *See, e.g., Ex parte Waites*, No. WR-71,327-01, 2009 WL 252355, at *1 (Tex. Crim. App. 2009) (stating that, in spite of applicant's 16-year delay in seeking post-conviction relief, no laches; although prosecutors and judge from applicant's trial were deceased, habeas record "does not contain anything to directly support [the] assertion of prejudice"); *Ex parte Like*, No. WR-70,021-01, 2008 WL 2677329, at *1 (Tex. Crim. App. 2008) (stating that, in spite of 24-year delay, State's "conclusory statement" that it was prejudiced in ability to respond insufficient; "[a]bsent a particularized showing of *how* Applicant's delay has prejudiced the State's ability to respond to his claims, the doctrine of laches should not bar review" of applicant's claim that plea was involuntary); *Ex parte Eliff*, No. WR-64,223-01, 2006 WL 1545499, at *1 (Tex. Crim. App. 2006) (stating that, in spite of 23-year delay in seeking habeas, no laches; although one member of prosecution team had died, other prosecutor was available to testify regarding applicant's *Brady* claim); *Ex parte Scott*, No. WR-66,090-01, 2006 WL 3308748, at *1 (Tex. Crim. App. 2006) (rejecting laches defense after five-year filing delay; notwithstanding counsel's death, State failed to show that prejudice to its ability to respond to ineffective assistance claim was caused by delay); *see also Wolf*, 296 S.W.3d at 168 (rejecting laches defense after five-year filing delay; while applicant's attorney had destroyed all case files pertaining to representation of applicant and claimed he had no independent memory of relevant events, "the record contains no evidence of a causal connection between [counsel's] memory failures and [applicant's] alleged failure to act with reasonable diligence").

therefore, abandon that formulaic standard in favor of the more flexible common-law approach to laches in the post-conviction context.

### III. Common-Law Standard Better Comports With Equitable Considerations

As we have described above, the events of the last decade require that we abandon the aspect of *Carrio* that approved of Texas's application of the federal laches standard. *See Carrio*, 992 S.W.2d at 488. We, however, reaffirm *Carrio*'s holding that Texas courts may apply the common-law doctrine of laches in determining whether to grant habeas relief. *See id*. We, therefore, alter the holding of *Carrio* only to the extent that we now apply Texas common law, rather than the federal standard, to define the parameters of the doctrine of laches in Texas habeas corpus cases. *See id*.

Consistent with the common-law doctrine of laches, going forward, we will (1) no longer require the State to make a "particularized showing of prejudice" so that courts may more broadly consider material prejudice resulting from delay, and (2) expand the definition of prejudice under the existing laches doctrine to permit consideration of anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant, so that a court may consider the totality of the circumstances in deciding whether to grant equitable relief. *See Caldwell*, 975 S.W.2d at 538 (common-law definition of prejudice in laches context is "good faith change of position by another to his detriment because of the delay").[11]

---

[11]    Other states, applying their own common-law doctrine of laches, have permitted a court to consider whether the State will be prejudiced in its ability to retry an applicant. *See, e.g., Raso v. Wall*, 884 A.2d 391, 396 n.14 (R.I. 2005) (applying common-law doctrine of laches to applications

Our revised approach will permit courts to more broadly consider the diminished memories of trial participants and the diminished availability of the State's evidence, both of which may often be said to occur beyond five years after a conviction becomes final. *See, e.g.*, *Steptoe,* 132 S.W.3d at 437-39 (Cochran, J., dissenting) (advocating adoption of rebuttable presumption of prejudice to State five years after conviction in light of social and administrative costs associated with retrial); *McCray v. Florida*, 699 So. 2d 1366,1368 (Fla. 1997) (applying presumption of prejudice in Florida post-conviction cases after five years, explaining that it was "obvious that the state has been manifestly prejudiced and no reason for an extraordinary delay has been provided").[12]

for post-conviction relief and permitting consideration of State's ability to retry the case); *Armstrong v. State*, 747 N.E.2d 1119, 1120 (Ind. 2001) (same, noting that "prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution"); *In re Douglas*, 132 Cal. Rptr. 3d 582, 588 (Cal. App. 4th Dist. 2011) (same, noting "difficulty of retrial in the event that a judgment is set aside on habeas corpus many years after the conviction") (citing *In re Clark*, 855 P.2d 729, 765 (Cal. 1993)); *Thomas v. State*, 903 P.2d 328 (Okl. Crim. App. 1995) (same); *In re Smith*, 339 P.2d 796 (Okla. Crim. App. 1959) (same, rejecting application, stating, "If a new trial in each case was granted after over twenty-four years lapse of time, the probabilities would be that it would be impossible to find the persons with knowledge of the facts surrounding the deaths of the two persons petitioner was charged with murdering"); *Moguel v. State*, 966 A.2d 963, 969 (Md. Ct. Spec. App. 2009) (in laches context, "[p]rejudice is generally held to be any thing that places [the opposing party] in a less favorable position").

[12]     We do not identify any precise period of time after which laches necessarily applies, although we recognize that delays of more than five years may generally be considered unreasonable in the absence of any justification for the delay. *See, e.g., Ex parte Florentino*, 206 S.W.3d 124, 126 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("Eight years elapsed between the time applicant's conviction was affirmed and the time at which he may file a PDR. Normally, laches should bar any relief on this claim."). We, however, recognize that, as a result of the statutory bar on subsequent habeas applications, applicants are limited to "one bite at the apple," and, as such, applicants may be motivated to delay filing in order to fully develop all potentially meritorious claims for consideration by the Court. *See Carrio*, 992 S.W.2d at 491 n.5 (Meyers, J., dissenting) (noting that applicants are "placed in the awkward position of determining when they have waited long enough to ensure that all claims are included, but not so long as to invoke the application of laches"). Because of the tension between laches and the bar on subsequent writs, we do not foresee that the

Our revised approach under the broadened prejudice standard is consistent with the principle that the writ of habeas corpus is an extraordinary remedy, any grant of which must be underscored by elements of fairness and equity. *See, e.g., Ex parte Emmons,* 660 S.W.2d 106, 110 (Tex. Crim. App. 1983); *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994).[13] This revised standard will permit courts to engage in a case-by-case inquiry to determine whether equitable relief is warranted in light of the particular circumstances surrounding each case. *See, e.g.*, *Holland v. Florida*, 130 S.Ct. 2549, 2563 (2010) (courts of equity must take account of "specific circumstances, often hard to predict in advance, [that] could warrant special treatment in an appropriate case"); *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964) ("exercise of a court's equity powers . . . must be made on a case-by-case basis"); *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules; it depends on flexibility."). It will also provide the flexibility necessary for balancing equities to determine whether laches should apply. *See, e.g., Baxter v. Estelle,* 614 F.2d 1030, 1033-34 (5th Cir. 1980) ("Laches is an equitable doctrine. Its application must be considered on the facts of each case, based on the reasonableness of the party's behavior under the circumstances."); *Esso Int'l, Inc. v. SS Captain John*, 443 F.2d 1144, 1150 (5th Cir. 1971)

---

doctrine of laches will ordinarily apply to any application filed within five years after the exhaustion of direct appeals.

[13]     Because the State raised laches in response to this application, we do not reach the question of whether the State must plead laches for a court to consider it in determining whether to grant equitable relief. We do observe, however, that any pleadings invoking laches in the habeas context need only give notice to the opposing side and need not rise to the level of a prima facie showing of particularized prejudice, as was required under the federal courts' interpretation of Rule 9(a). *See Walters*, 21 F.3d at 686; *Strahan*, 750 F.2d at 441.

(applicability of laches to be determined "after weighing the equities as they appear from the facts of each case").[14]

Similar to a court's review of a claim that a defendant's right to a speedy trial has been violated, it may be proper to consider, among all relevant circumstances, factors such as the length of the applicant's delay in filing the application, the reasons for the delay, and the degree and type of prejudice resulting from the delay. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). As we have observed with respect to speedy-trial complaints, "[n]o single factor is necessary or sufficient." *Id*. Instead, courts must "engage in a difficult and sensitive balancing process" that takes into account the parties' overall conduct. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). In considering whether prejudice has been shown, a court may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial. *Id*. (in speedy-trial context, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or, for that matter, identify") (*citing Doggett v. United States*, 505 U.S. 647, 655 (1992)). If prejudice to the State is shown, a court must then weigh that prejudice against any equitable considerations that militate in favor of granting habeas relief.

With respect to the degree of proof required, the extent of the prejudice the State must

---

[14] Our altered approach is consistent with other states that, in applying their own common law, have recognized that the laches inquiry must be flexible and made in light of the particular circumstances of the case. *See, e.g., Raso*, 884 A.2d at 395-96 (stating that laches inquiry is flexible and any "determination must be made in light of the circumstances of the particular case").

show bears an inverse relationship to the length of the applicant's delay. This "sliding scale" approach is analogous to the flexible burden of proof applicable to speedy-trial claims. In that context, this Court has observed that the defendant's burden of proving a speedy-trial violation varies inversely with the State's degree of culpability and the length of the delay. *See Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) ("[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial."). Here, similarly, the longer an applicant delays filing his application, and particularly when an applicant delays filing for much more than five years after conclusion of direct appeals, the less evidence the State must put forth in order to demonstrate prejudice. The rationale for this sliding-scale approach is based on the common-sense understanding that the longer a case has been delayed, the more likely it is that the reliability of a retrial has been compromised. *See Dragoo*, 96 S.W.3d at 314; *Doggett*, 505 U.S. at 655.

Furthermore, our revised approach comports with this Court's prior statements that, in determining whether habeas relief is warranted, we must afford adequate weight to the State's broad interest in the finality of a long-standing conviction. *See Ex parte Moreno*, 245 S.W.3d 419, 429 (Tex. Crim. App. 2008) (State possesses legitimate interest in "the repose and finality of its convictions"); *Ex parte Woods*, 296 S.W.3d 587, 613 n.41 (Tex. Crim. App. 2009) (noting that courts must "seek through the writ of habeas corpus to balance fundamental fairness to criminal defendants and the State's legitimate interest in the finality of litigation"). By expanding the scope of the prejudice inquiry, we further ensure that courts

are permitted to consider the State's and society's interest in the finality of a conviction in determining whether laches should apply.[15]

Aside from the changes discussed above, we leave intact the equitable principles that permit a court to reject the State's reliance on laches when the record shows that

- an applicant's delay was not unreasonable because it was due to a justifiable excuse or excusable neglect;

- the State would not be materially prejudiced as a result of the delay; or

- the applicant is entitled to equitable relief for other compelling reasons, such as new evidence that shows he is actually innocent of the offense or, in some cases, that he is reasonably likely to prevail on the merits.

*See, e.g., Ex parte Scott*, 190 S.W.3d 672, 675 (Tex. Crim. App. 2006) (Cochran, J., concurring) (suggesting that equitable relief might be warranted notwithstanding applicant's delay in seeking habeas relief where applicant shows that conviction was wrongly affirmed by court of appeals); *Ex parte Blue*, 230 S.W.3d 151, 170 (Tex. Crim. App. 2007) (Keller, P.J., concurring) (habeas courts possess "equitable discretion" to see that "federal

---

[15]     The dissenting opinion suggests that, at this stage, we need not consider the State's ability to retry a case because that can be done later. But there will never be a later time. If, in granting an application for a writ of habeas corpus, an appellate court returns a case to a trial court for retrial, a trial court has no authority to disregard the directive by determining that the retrial would be barred by laches. Specific to the issue of out-of-time PDRs, the dissenting opinion suggests that we should grant leave to file an out-of-time PDR and decide the laches issue only if we later decide on discretionary review that applicant (now turned appellant) is entitled to relief. Such an approach would not only overlook the State's properly raised laches argument here, but it would also overlook the fact that this Court's decision to grant an out-of-time PDR is a procedurally significant one that restores certain rights to an appellant. *See Mestas v. State*, 214 S.W.3d 1, 4 (Tex. Crim. App. 2007) (effect of granting out-of-time appeal is that it "restores the defendant" to position he was in prior to deprivation of right of appeal).

constitutional errors do not result in the incarceration of innocent persons") (quoting *Herrera v. Collins*, 506 U.S. 390, 404-05 (1990)).

Given the nature of habeas corpus relief, it is reasonable to permit a court to consider whether an applicant has slept on his rights and, if he has, how that has affected the State, and whether, in light of the delay, it is fair and just to grant him relief. In cases in which an applicant's delay has been excessive, in general, it is more likely that the State will be able to show it has been prejudiced by the delay and that an applicant will face a difficult task to show why his application should not be barred by laches. *See Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003) (laches doctrine applied on a "sliding scale": the longer the delay, the less prejudice must be shown). We, however, also reaffirm that "we have no desire to impose upon defendants the requirement that claims for relief be asserted within a specified period of time," but will continue to apply laches as a bar to relief when an applicant's unreasonable delay has prejudiced the State, thereby rendering consideration of his claim inequitable. *See Carrio*, 992 S.W.2d at 487 (citing *Ex parte Galvan*, 770 S.W.2d 822, 824 (Tex. Crim. App. 1989)). Though proof of mere passage of time will continue to be insufficient to raise laches, we will weigh all relevant equitable considerations in determining whether a long-delayed application for post-conviction relief should be barred by laches.

### III. Conclusion

In light of our revised approach to the doctrine of laches, and because neither applicant nor the State has had the benefit of this opinion, we remand this case to the trial

court so that the parties may be afforded the opportunity to produce additional evidence.

Delivered:   May 8, 2013

Publish