In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00250-CR
_____

EX PARTE CARLOS GONZALES

On Appeal from the County Court at Law No. 1
Montgomery County, Texas
Trial Cause No. 14-28020

MEMORANDUM OPINION

In January 2005, Carlos Gonzales pleaded guilty to theft and burglary of a vehicle. In March 2014, Gonzales filed an application for writ of habeas corpus with the trial court, in which he alleged that: (1) his plea was involuntary because he did not understand English and an interpreter was not available to him; and (2) trial counsel rendered ineffective assistance by failing to request an interpreter. In its response, the State argued that Gonzales's claim is barred by the doctrine of laches. The trial court denied Gonzales's motion and found that, because of Gonzales's "extensive and unjustifiable delay in presenting his claims" to the trial court, the doctrine of laches barred review of Gonzales's claims. In two appellate

issues, Gonzales contends that his plea was involuntary and application of the doctrine of laches is "unfair and inappropriate." We affirm the trial court's order denying habeas relief.

We review the denial of an application for writ of habeas corpus under an abuse of discretion standard. *Ex parte Klem*, 269 S.W.3d 711, 718 (Tex. App.—Beaumont 2008, pet. ref'd). We consider the entire record and review the facts in the light most favorable to the trial court's ruling. *Id.* We afford almost total deference to the trial court's determination of historical facts supported by the record, especially findings that are based on an evaluation of credibility and demeanor. *Id.* We afford the same deference to the trial court's rulings on application of law to fact questions when resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* We review the determination *de novo* when resolution of those questions turns on an application of legal standards. *Id.*

In his affidavit, Gonzales stated that he is from Mexico and, at the time of his plea, he spoke Spanish and could not read, write, or understand English. Gonzales claimed that he struggled to understand the trial judge, was unaware of the constitutional rights being waived, no interpreter was provided for him, and his attorney could not help him understand. Gonzales believed that signing the plea papers meant he could go home.

At a hearing on Gonzales's application for writ of habeas corpus, Phyllis Martin, the Montgomery County auditor, testified that she normally receives an invoice from the interpreter and a notice from the trial court and, if the claim is approved, she submits the claim to the commissioners for payment. Martin's records revealed that "some interpreters were appointed [and paid] to this court with regards to Mr. Gonzales for this cause number in County Court at Law No. 1[,]" but there was no evidence of one being appointed and paid in January 2005. She testified that it is possible that an interpreter was paid for services on the day of Gonzales's plea for a court other than the County Court at Law No.1 or that the interpreter was not approved for payment or neglected to seek payment.

Jimmy Jones, Gonzales's trial attorney on the day of his plea, testified that he required an interpreter for clients who lacked a sufficient understanding of English. He could not recall if a certified interpreter was sworn in Gonzales's case. Jones explained that he would not have used English plea documents without an interpreter and that, although he could have taken a couple of hours to explain the admonitions in Spanish, he believed his Spanish was inadequate. According to Jones, absent explaining the admonitions himself or providing an interpreter, he would not have signed plea papers acknowledging that he had (1) discussed with Gonzales all of the rights set forth in the papers or (2) consulted with Gonzales,

whom he found to be competent and to whom he fully explained all the matters contained in the plea papers. Jones testified that he would not have had a defendant enter a plea without someone available to explain the admonitions.

We begin our analysis with Gonzales's second issue, in which he contends that the trial court unfairly and inappropriately applied the doctrine of laches to his case. The laches doctrine refers to a party's failure to assert a claim which, along with the lapse of time and other circumstances causing prejudice to the adverse party, bars the claim. *Ex parte Perez*, 398 S.W.3d 206, 210 (Tex. Crim. App. 2013). The doctrine also includes the failure, for an unreasonable and unexplained period of time under circumstances permitting diligence, to do what should have been done. *Id*. The trial court considers the totality of the circumstances, including all forms of prejudice, when deciding whether to apply the doctrine of laches. *Id*. at 208.

The State need not make a particularized showing of prejudice. *Id*. at 215. The court may consider "anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant[.]" *Id*. "[T]he longer a case has been delayed, the more likely it is that the reliability of a retrial has been compromised." *Id*. at 218. This includes "the diminished memories of trial participants and the diminished availability of the State's evidence, both of which

4

may often be said to occur beyond five years after a conviction becomes final." *Id*. at 216. Among the relevant factors that the trial court may consider are the "length of the applicant's delay in filing the application, the reasons for the delay, and the degree and type of prejudice resulting from the delay." *Id*. at 217. The "court may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial." *Id*. If prejudice is shown, the trial court must then weigh that prejudice against equitable considerations that favor granting habeas relief. *Id*. The longer the delay, particularly when the delay exceeds five years after conclusion of direct appeals, the less evidence the State must present to demonstrate prejudice. *Id*. at 215. "[D]elays of more than five years may generally be considered unreasonable in the absence of any justification for the delay." *Id*. at 216 n.12.

In this case, Gonzales waited much longer than five years before seeking habeas relief. The record demonstrates that the Montgomery County District Attorney's Office no longer has Gonzales's case file, trial counsel could not locate his own file and did not recall representing Gonzales, the reporter's record was no longer available, and the clerk's record neither contains an offense report nor identifies the arresting officer. Other than acknowledging Gonzales's failure to understand his predicament before being detained, Gonzales's counsel did not offer

5

the trial court an explanation for the delay in seeking habeas relief. Under these circumstances, the trial court could reasonably conclude that the nine-year delay was unreasonable and unexplained, compromised the reliability of a retrial, and was prejudicial to the State. *See id.* at 210, 216-18. Because the trial court did not abuse its discretion by finding that the doctrine of laches barred habeas relief, we overrule issue two and need not address issue one. *See id*. at 210; *see also* Tex. R. App. P. 47.1. We affirm the trial court's order denying Gonzales's application for writ of habeas corpus.

     AFFIRMED.

                             _____

                             STEVE McKEITHEN
                             Chief Justice

Submitted on January 28, 2015
Opinion Delivered February 18, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.