

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| EX PARTE: | § | No. 08-23-00281-CR |
|  | § | Appeal from the |
| ROBERT KAUFMAN, | § | 327th Judicial District Court |
| Appellant. | § | of El Paso County, Texas |
|  | § | (TC# 930D05122) |

**<u>MEMORANDUM OPINION</u>**

Appellant Robert Kaufman, a person who has completed a term of community supervision, filed an application for a writ of habeas corpus pursuant to Article 11.072 of the Texas Code of Criminal Procedure. Kaufman's application sought to vacate and set aside his guilty plea and deferred adjudication order, which were entered in June 1993 in trial cause number 930D05122.[1] In three issues, Kaufman appeals the denial of his petition, wherein he asserts the habeas court erred because: (1) it held his writ claims were barred by laches; and (2) it denied his ineffective assistance of counsel claim and his involuntary plea claim on their merits. For the following reasons, we affirm.

---

[1] The appellate record shows trial cause number 930D05122 was formerly designated as trial cause number 70084.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Kaufman seeks habeas corpus relief from an order of deferred adjudication entered in June 1993. Supporting that order, Kaufman pleaded guilty in open court to sexual assault of a child in violation of Texas Penal Code § 22.011. After accepting his plea, the trial court deferred his adjudication of guilt and placed him on community supervision for a period of five years as provided by Article 42.12, § 5(a) of the Code of Criminal Procedure. In December 1995, the trial court granted Kaufman's motion for early release, discharging him from probation and dismissing his case.[2]

Decades later, in July 2023, Kaufman filed an Article 11.072 application for writ of habeas corpus, seeking to vacate and set aside his guilty plea in his criminal case.[3] He claimed the 1993 deferred-adjudication order constituted a restraint on his liberty because he now faced suspension of his license to practice medicine as a nurse practitioner in the state. He alleged the Texas Department of Public Safety (DPS), among other officials, had initiated a court action in the 384th District Court of El Paso County, to retroactively force him to register as a sex offender under the sex offender registry laws of the state, despite that no registration requirement had been included as a part of his 1993 plea agreement.[4] Kaufman described that DPS had based its actions on the deferred-adjudication probation he received after entering a plea of guilty in trial cause number 930D05122. Although no decision has yet been rendered by the 384th District Court, his habeas

---

[2] The order was entered in trial cause number 70084. Again, this cause number was later redesignated to trial cause number 930D05122.

[3] In footnote 9, Kaufman's application notes it encompassed both cause number 67624-41, the number of his original indictment, (which was later changed to 920D07012), and trial cause number 70084-41, or the number of the second indictment, (which was changed to 930D05122).

[4] Kaufman's appellate brief notes that litigation is currently pending against the State and local officials' retroactive attempt to apply the offender registration laws to him. This civil suit is docketed in the 384th Judicial District Court of El Paso County in trial cause number 2019DCV4173.

petition urged that a substantial probability existed that he would lose his right to continue to work as a nurse practitioner, if he were forced to register as a sex offender by reason of his 1993 plea and deferred probation.

In seeking habeas relief, Kaufman maintained his 1993 plea was involuntary and void for three reasons: (1) he had been led to believe he was pleading guilty to sexual assault of an adult, not sexual assault of a child; (2) the State committed a *Brady* violation by failing to notify him that his original charge of sexual assault had been dismissed and reindicted as sexual assault of a child; and (3) his trial counsel had rendered ineffective assistance of counsel. In support, Kaufman attached the District Clerk's records pertaining to his original charge of sexual assault and reindicted charge of sexual assault of a child; and police reports and witness statements contained in the case file of the El Paso County District Attorney for cause number 920D07012.

The State responded to Kaufman's habeas application asserting his claims were all barred by the common law doctrine of laches due to Kaufman's unreasonable and unjustified delay in filing his writ application. Alternatively, the State contended his claims all failed on their merits. In addition to various court filings, the State's answer attached the following: (1) an affidavit of Jose Troche, Kaufman's former trial attorney in his sexual assault case; (2) an email from the court reporter of the trial court noting she had no notes or transcripts of the plea hearing of the 1993 plea because she only retained records for ten years; and (3) a copy of the written statement to police of the complaining witness of the 1993 criminal case.

The trial court held an evidentiary hearing on Kaufman's application. During the hearing, the court heard testimony from three witnesses to include Kaufman himself, from his criminal defense attorney who represented him in 1993, and from a former civil attorney who was hired in

3

2020 in regard to his civil litigation with DPS and other officials. The parties also admitted various court records of Kaufman's criminal and civil proceedings.

At the hearing, Kaufman testified he was not informed by his attorney that his original indictment alleging sexual assault had later been dismissed and the charge was reindicted to sexual assault of a child. On the morning of the jury trial setting, he claimed his defense attorney informed him that his case had been pushed back a week and for him to show up the same time the following week. When he arrived in court a week later, his lawyer informed him of the State's offer of deferred adjudication in exchange for a plea of guilty. Kaufman testified his attorney advised he would be able to go to school and he would *not* have to register as a sex offender. Kaufman described that he accepted the plea offer, but in doing so, he contended he was never informed or aware he would be pleading guilty to sexual assault of a child.

Kaufman further testified it was not until September 2018 or 2019 when he first learned of a purported requirement imposed on him to register as a sex offender because he had once been placed on deferred adjudication for sexual assault of a child. He only learned of the registration requirement when a police officer left a business card on his front door with a note asking him to contact him. When they eventually met, Kaufman informed the officer he had successfully completed his deferred probation years earlier and no registration had been imposed. Soon, Kaufman contacted and eventually retained attorney James Lucas for representation on the purported registration requirement.

In October 2019, Kaufman filed a civil lawsuit against DPS, the City of El Paso, and several other State and local officials, seeking a declaratory judgment to determine his rights under the 1993 plea bargain agreement, to determine his status under the law, and to determine whether sex-offender registration requirements applied to him. Kaufman's suit also sought temporary and

4

permanent injunctive relief. Due to entry of a temporary injunction, Kaufman testified he is *not* currently registered on the sex offender registry.

While testifying to the habeas court, Kaufman further described that, back in 1999, when he first obtained his nurse practitioner's license, he encountered no difficulties. But he asserted his license to practice medicine would be automatically revoked if he were to currently register as a sex-offender. When asked why he waited so long to file his writ application, Kaufman answered: "I wasn't aware of what had happened." He added that, not until his divorce started, did he find out what was happening with the nursing board. He clarified it was the threat of registration that caused a restraint on his liberty, and that restraint is what supported his application for habeas relief.

Kaufman's former criminal defense attorney, Jose Troche, was called by the State as a witness. He testified he recalled that he had represented Kaufman back in 1992 and '93 on a sexual assault charge. He noted he no longer had possession of his file as he only kept records for up to ten years. Troche described that, on the initial day set for trial, the prosecution announced its dismissal of the original charge of sexual assault and its intent to reindict the charge. Although he lodged an objection, it was not successful. Troche prepared for trial again. Once he learned of the reindictment, he called Kaufman to let him know the complaining witness's consent was no longer a triable issue. Troche testified that Kaufman decided to plead guilty. Troche then negotiated a plea agreement that resulted in deferred adjudication probation. When Troche reviewed the plea papers with Kaufman, he testified he told him he was being charged with sexual assault of a child. Troche also represented Kaufman when he successfully sought early termination of his probation and dismissal of the charge. After that time, he had no recollection of talking with Kaufman again until most recently.

The habeas court denied habeas relief by written order that included findings of fact and conclusions of law. The court determined that Kaufman's writ claims were all barred by the doctrine of laches. Alternatively, it also found he had failed to carry his burden of proving each of his claims on their merit. This appeal soon followed.

## II. STANDARD OF REVIEW

We apply an abuse of discretion standard when reviewing a trial court's decision to grant or deny habeas relief. *Ex parte Wheeler*, 203 S.W.3d 317, 323–24 (Tex. Crim. App. 2006). We view the facts in the light most favorable to the trial court's ruling and defer to its implied factual findings where supported by the record. *Id.* at 325–26. We review de novo mixed questions of law and fact that do not depend upon credibility and demeanor. *Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014). We only reverse the trial court's ruling if we conclude it is arbitrary, unreasonable, and made without reference to guiding rules or principles. *Ex parte Medrano*, No. 08-21-00016-CR, 2022 WL 1681860, at *2 (Tex. App.—El Paso May 26, 2022, pet. ref'd).

Article 11.072 governs habeas corpus proceedings involving a person who is serving or who has completed a term of community supervision. *See* Tex. Code Crim. Proc. Ann. art. 11.072; *Ex parte Vasquez*, 499 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). In a proceeding brought under this article, the trial court is the sole finder of fact. *See* Tex. Code Crim. Proc. Ann. art. 11.072, §§ 6–7 (providing that a trial court shall enter a written order granting or denying the relief sought in the habeas application, to include findings of fact and conclusions of law, unless the court otherwise determines the application is frivolous).

## III. THE DOCTRINE OF LACHES

In his first issue, Kaufman contends the trial court erred in denying his application for writ of habeas corpus based on the doctrine of laches. Kaufman contends that he provided a compelling

6

reason for his delay in filing his writ application and the State failed to produce evidence of prejudice either by affidavit or testimony.

The trial court made the following relevant findings of fact and conclusions of law pertaining to laches:

FINDINGS OF FACT

*Laches*

13. This Court finds that Kaufman's trial counsel, Attorney Troche, remembers the specifics of his representation of Kaufman, but no longer has access to his case file.

14. This Court has been presented with no compelling reasons by Kaufman to excuse his unreasonable delay in filing his writ application.

15. This Court finds that due to this unreasonable delay, the State will have considerable difficulty getting in touch with the complaining witness, as she was 16 years old at the time of the offense and may no longer live at her last known address in Juarez, Mexico.

16. This Court finds that the State has been prejudiced in its ability to respond to Kaufman's writ allegations that he was unaware that he pleaded guilty to sexual assault of a child in that he waited to file his writ application until after the transcript of his plea was no longer available.

17. This Court finds that the passage of time makes it impossible for the State to proceed to trial in a contested trial of this case.

CONCLUSIONS OF LAW

1. Kaufman's writ claims are all barred by the doctrine of laches. . . .

**A. Factors to consider**

The writ of habeas corpus is well-recognized as an extraordinary remedy and granting the writ "must be underscored by elements of fairness and equity." *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). Equity and fairness "require a consideration of unreasonable delay." *Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014) (per curiam). The Court of

Criminal Appeals has determined that the doctrine of laches appropriately applies in habeas proceedings. *Ex Parte Perez*, 398 S.W.3d 206, 210 (Tex. Crim. App. 2013); *Bowman*, 447 S.W.3d at 888 (holding "laches applies to Art. 11.072"). This common law doctrine is defined as:

> neglect to assert [a] right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done.

*Perez*, 398 S.W.3d at 210. In short, "[t]he doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights." *Smith*, 444 S.W.3d at 666.

Two principles animate laches: (1) unreasonable delay by the opposing party; and (2) prejudice resulting from the delay. *Perez*, 398 S.W.3d at 210 n.3; *see also Smith*, 444 S.W.3d at 666. A showing of prejudice to the State includes consideration of "anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant[.]" *Perez*, 398 S.W.3d at 215. Proof of "mere passage of time" is sufficient to raise laches. *Id.* at 219.

Whether laches applies is a question of fact to be considered on a case-by-case basis. *Bowman*, 447 S.W.3d at 888. Courts may consider "the totality of the circumstances in deciding whether to grant equitable relief," including "the diminished memories of trial participants and the diminished availability of the State's evidence[.]" *Perez*, 398 S.W.3d at 215–16.

As guidance, the Court of Criminal Appeals has addressed relevant factors proper to consider when deciding whether a claim for habeas relief should be barred by laches. *See id.* at 217. These include, "among all relevant circumstances, factors such as the length of the application's delay in filing the application, the reasons for the delay, and the degree and type of prejudice resulting from the delay." *Id.* "[N]o single factor is necessary or sufficient," but "courts must 'engage in a difficult and sensitive balancing process' that takes into account the parties'

8

overall conduct." *Id.* "[A] court may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial." *Id.* When prejudice is shown, the court "must then weigh that prejudice against any equitable considerations that militate in favor of granting habeas relief." *Id.* The degree of proof required is a "sliding scale" approach where "the longer an applicant delays filing his application . . . the less evidence the State must put forth in order to demonstrate prejudice." *Id.* at 217–18. Additionally, when determining whether habeas relief is warranted, we must consider "the State's broad interest in the finality of a long-standing conviction." *Id.*

Courts may reject the State's reliance on laches when the record shows that (1) an applicant's delay was not unreasonable because it was the result of a justifiable excuse or excusable neglect; (2) the State would not be materially prejudiced as a result of the delay; (3) the applicant is entitled to equitable relief for other compelling reasons, such as new evidence showing that he is actually innocent of the offense or, in some cases, that he is reasonably likely to prevail on the merits. *Id.* at 218. The Court of Criminal Appeals declined to impose a requirement that a defendant assert a claim for habeas relief within a specific period of time, stating instead that it "will continue to apply laches as a bar to relief when an applicant's unreasonable delay has prejudiced the State, thereby rendering consideration of his claim inequitable." *Id.* at 219. The Court noted, however, that a delay of more than five years "may generally be considered unreasonable in the absence of any justification for the delay." *Id.* at 216 n.12.

### B. Analysis

To start, there is no dispute in this instance that Kaufman waived his right to a jury trial in open court on June 21, 1993, and entered a plea of guilty to the charge of sexual assault of a child. After considering the pleadings and evidence offered during the hearing, the trial court placed him

9

on deferred adjudication community supervision for five years. Thereafter, on December 4, 1995, the trial court granted Kaufman's motion for early discharge from supervision and dismissed his case pursuant to Article 42.12 § 5(a) of the Code of Criminal Procedure. On July 10, 2023, or more than 30 years after entering that guilty plea, and 28 years after the court's dismissal of the case, Kaufman filed his application for writ of habeas corpus.

The State argues the trial court had reasonably found that Kaufman gave no justifiable excuse for his 30-year delay in seeking habeas relief. Alternatively, it argues that even if Kaufman justified his 30-year delay, he still provided no explanation for why he waited up to five years after an officer informed him in 2018 that he was required to register as a sex offender. The State further argues the court reasonably found Kaufman's delay in seeking habeas relief prejudiced the State because it may have trouble locating the complaining witness who lived in Juarez, Mexico at the time of the offense. Opposing these arguments, Kaufman urges his writ application was not barred by laches because he provided a compelling reason for his delay and the State failed to support its claim of prejudice by affidavit or live testimony.

The Court of Criminal Appeals has held that a delay longer than five years after a judgment becomes final "may generally be considered unreasonable in the absence of any justification for the delay." *Perez*, 398 S.W.3d at 216 n.12. In explaining his delay in seeking relief, Kaufman asserts he was only prompted to do so after he was informed in 2018 that he was obligated to register as a sex offender. He testified that, at the time he pled guilty in open court, he was not aware that, years later, he would be told he needed to register as a sex offender. Kaufman asserts the trial court abused its discretion because it failed to consider or make findings on the imposition of such retroactive registration, and prejudice that resulted therefrom. At the habeas hearing, Kaufman testified his license to practice as a nurse practitioner would automatically be revoked,

leading to a closure of his practice and prevention of him working in his chosen profession. Though Kaufman testified to the impact that registering would cause to his employment, he provided no explanation for why he waited nearly 30 years to seek habeas relief from when he pleaded guilty, or nearly five years after learning of a purported registration requirement.

Kaufman claims that—because sex offender registration was not a condition of his plea agreement, nor a condition imposed by the order of deferred adjudication—the retroactively imposed requirement qualifies as "new evidence" of his rights being impacted sufficient for the court to consider that his delay in seeking relief was justifiable. Nonetheless, we disagree that Kaufman provided "new evidence" that would entitle him to equitable relief. *See id.* at 218. Here, Kaufman neither asserts a claim of actual innocence nor provides another compelling reason to excuse his delay. Deferring to the trial court's findings supported by the record, we conclude the trial court did not err in finding Kaufman's delay was unjustifiable.

As for the State's claim of prejudice should relief be granted, it argued the passage of 30 years likely made it impossible for it to prove its case given how difficult it would be to get in touch with the complaining witness. Because she was 16 years old and living in Mexico at the time of the offense, the State urged it was unlikely it could find her now after such a long passage of time. Additionally, the State asserted it was prejudiced in responding to Kaufman's writ allegations concerning the voluntariness of his plea and the effectiveness of counsel because the transcript of his plea hearing is no longer available. Additionally, attorney Troche testified that, although he investigated the allegations at the time of the offense, his investigator has since died and he himself no longer has his own file concerning the investigation. He also testified that Kaufman never raised any issue with his representation at the time of his representation.

11

Here, Kaufman's claims center on the voluntariness of his plea and his trial counsel's performance from more than 30 years ago. Given this extended delay, the State's burden to produce evidence establishing prejudice is significantly lessened because of "the common-sense understanding that the longer a case has been delayed, the more likely it is that the reliability of a retrial has been compromised." *Id.* at 218. When determining whether habeas relief is warranted, we must consider "the State's broad interest in the finality of a long-standing conviction." *Id.* Accordingly, we determine a reasonable inference supports the trial court's determination that the reliability of a retrial was compromised by Kaufman's multi-year delay. *Id.*

Considering the evidence in the light most favorable to the trial court's ruling and deferring to the trial court's findings supported by the record, we conclude the trial court did not err in concluding that laches bars Kaufman from habeas relief. We overrule Kaufman's first issue.

Because of our disposition of this issue, we need not address Kaufman's remaining issues. *See* Tex. R. App. P. 47.1.[5]

## IV. CONCLUSION

We affirm the trial court's order.

GINA M. PALAFOX, Justice

October 3, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

---

[5] We express no opinion here on whether Kaufman is legally obligated to register under the State's registration laws.

12