

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-78,402-01

## EX PARTE VIRGIL JOEALLEN MARTIN, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. 9412689-A IN THE 177TH DISTRICT COURT
## FROM HARRIS COUNTY

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., PRICE, HERVEY, COCHRAN, and ALCALA, JJ., joined. JOHNSON, J., concurred. MEYERS, J., dissented. WOMACK, J., not participating.

## O P I N I O N

Based upon the alleged ineffective assistance of his trial and appellate counsel, Virgil Martin seeks relief from a sixty-five year sentence for aggravated robbery. He cites counsel's failure to raise a co-conspirator's Fifth Amendment rights on appeal, to object to hearsay, and to present mitigation evidence. Because we find Martin's grounds either without merit or barred by the equitable doctrine of laches, we deny his requested relief.

## I. Facts

On November 29, 1993, Jerry Riley pulled into his garage after a night of bowling. After exiting his car, Riley was approached by a figure who pointed a gun at him and demanded money. Riley instead struggled with his attacker, suffering gunshot wounds to his thumb and abdomen that caused him to fall to the ground. His attacker then rolled him over so that he could steal Riley's wallet—containing fourteen dollars—before fleeing in a grey Nissan Pathfinder. Riley survived the attack after his wife and son rushed him to the hospital.

After receiving a tip, the police located the Pathfinder and found fingerprints in it belonging to the applicant, Virgil Martin. Two witnesses further linked Martin to the shooting. At trial, Martin's co-conspirator Alvin Woods, despite invoking his Fifth Amendment rights, was compelled to testify against Martin. Korena Medina also testified against Martin, recounting—among other statements and observations—Woods's accusatory statements towards Martin after the shooting. Furthermore, though Riley could not identify Martin as his attacker during a photo spread while still undergoing treatment at the hospital, he did later identify Martin as his attacker in court. On May 10, 1995, the jury found Martin—a fifteen-year-old juvenile at the time of the shooting—guilty of aggravated robbery and sentenced him to sixty-five years' imprisonment. The Fourteenth Court of Appeals affirmed Martin's conviction[1] and the mandate of affirmance was issued on January 29,

---

[1] *Martin v. State*, No. 14-95-00547, 1997 WL 539566 (Tex. App.—Houston [14th Dist.] Sept. 4, 1997, pet. ref'd) (not designated for publication).

1998.

## II. Procedural History

On August 30, 2011—more than thirteen years after his judgment was affirmed—Martin filed his initial application for writ of habeas corpus, which challenged his conviction on the grounds of ineffective assistance of trial and appellate counsel. Specifically, Martin alleged:

1. Appellate counsel's failure to raise the trial judge's denial of Woods's Fifth Amendment privilege;

2. Trial counsel's failure to object to Medina's "harmful, inculpatory hearsay testimony"; and

3. Trial counsel's failure to present mitigation evidence.

Judge Kevin Fine presided over Martin's initial habeas application and issued findings of fact and conclusions of law recommending relief on all three grounds. We, however, remanded Martin's application to the habeas court to make further findings of fact and conclusions of law as to whether the State suffered any prejudice from Martin's thirteen-year delay under our recently reformed laches standard.[2] On remand, Judge Ryan Patrick presided over Martin's application following Judge Fine's resignation and concluded that Martin's third ground was barred by laches. Judge Patrick made no recommendation as to Martin's first two grounds.

## III. Analysis

---

[2] *See Ex parte Perez*, 398 S.W.3d 206 (Tex. Crim. App. 2013).

Under *Strickland v. Washington*'s two-part test for ineffective assistance of counsel, a habeas applicant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense.[3]  To prove deficient performance, the applicant must show that counsel's performance fell below an "objective standard of reasonableness."[4]  Courts analyze deficient performance "in light of all the circumstances," allowing for a "wide range of professionally competent assistance," and commonly assume a "strategic motive if any can be imagined."[5]  To prove prejudice, the applicant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[6]  A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome."[7]

Because we find two of Martin's three ineffective-assistance grounds legally barred by either standing or laches, we will address each ground in turn without any need to address whether all three taken together constitute ineffective assistance.[8]

---

[3]  466 U.S. 668, 687 (1984).

[4]  *Id.* at 687–88.

[5]  *Id.* at 690; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

[6]  *Strickland*, 466 U.S. at 694.

[7]  *Id.*

[8]  *Cf. Ex parte Wellborn*, 785 S.W.2d 391, 396 (Tex. Crim. App. 1990) ("Although, no one instance in the present case standing alone is sufficient proof of ineffective assistance of counsel, counsel's performance taken as a whole does compel such a holding.").

**A. Ground One: Woods's Fifth Amendment Rights**

Though we are entitled to raise laches *sua sponte* despite the State's failure to do so at the habeas hearing,[9] we choose not to because we find this ground to be without merit. Although the only habeas judge to address this ground, Judge Fine, concluded otherwise, we do not defer to, and instead review de novo, rulings on "mixed questions of law and fact" not based on an evaluation of credibility and demeanor.[10] The basis of this ground is appellate counsel's failure to raise the Fifth Amendment rights of a third party: Martin's co-conspirator Woods. Woods initially refused to testify, but he was compelled to after the trial court issued a subpoena and bench warrant and held him in contempt after concluding in a pretrial hearing, during which Woods was represented by counsel, that his Fifth Amendment privilege did not apply. Martin also cites the State's reassurance that Woods would not be charged if he told the truth and its threat of multiple contempt charges for each refusal to testify. But a litigant generally must "assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."[11] In justifying this self-imposed rule, the Supreme Court cautioned courts to be hesitant when adjudicating rights "unnecessarily," given that the "third parties themselves usually will be the best

---

[9] *See Ex parte Smith*, __ S.W.3d __, No. WR-79,465-01 (Tex. Crim. App. Oct. 1, 2014) ("[W]e now hold that a court may *sua sponte* consider and determine whether laches should bar relief.").

[10] *See Ex parte Navarijo*, 433 S.W.3d 558, 567 (Tex. Crim. App. 2014).

[11] *Powers v. Ohio*, 499 U.S. 400, 410 (1991).

proponents of their own rights."[12]

The Supreme Court recognizes only narrow exceptions to this rule, for example when a defendant raises the equal-protection rights of jurors,[13] an interest group raises the freedom-of-association rights of its members,[14] or a medical center raises the privacy rights of its patients.[15] But the Supreme Court has recognized these exceptions only when, among other requirements, the litigant has a "close relation" to the third party.[16] To determine the extent of the relationship between the litigant and the third party, the Supreme Court focuses on whether the right's enjoyment is "inextricably bound up" with the litigant's activity such that the litigant is "fully, or very nearly, as effective a proponent of the right" as the third party itself.[17]

But courts have made clear that an "accused's right against self-incrimination is personal, and cannot be invoked or waived by anyone other than the accused."[18] And the

---

[12] *Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976).

[13] *Powers*, 499 U.S. at 415.

[14] *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459–60 (1958).

[15] *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965).

[16] *Powers*, 499 U.S. at 410–11; *Singleton*, 428 U.S. at 113–14.

[17] *Singleton*, 428 U.S. at 114–15.

[18] *Dunn v. State*, 696 S.W.2d 561, 567 (Tex. Crim. App. 1985). *See also United States v. Fredericks*, 586 F.2d 470, 481 (5th Cir. 1978) ("Similarly, at trial, a defendant can neither assert the Fifth Amendment right against self-incrimination on behalf of a witness, nor, if the witness himself asserts his privilege, take advantage of an error of the court in overruling it.").

Supreme Court has long considered the Fifth Amendment "purely a personal privilege" that is "solely for the benefit" of the witness.[19] Co-conspirators enjoy no "close relation" with each other through which their rights are "inextricably bound up" such that one can assert the Fifth Amendment rights of the other. Indeed, during the course of a trial, co-conspirators often end up on opposing sides, whether by blaming the other to absolve themselves or by testifying for the prosecution as part of a plea agreement. Therefore, even if the trial court improperly compelled Woods to testify, Martin's counsel could not provide deficient performance by failing to assert a privilege that Martin had no standing to assert in the first place.

Nor has Martin shown that the methods used to compel Woods to testify—the court's issuing a subpoena and bench warrant, the State's reassuring him that he would not be charged if he told the truth and wrongly threatening him with multiple contempt charges, and ultimately the court's holding him in contempt—rise to the level of the "sort of third-degree physical or psychological coercion" that would undermine our confidence in the outcome of the case.[20] Trial courts and prosecutors commonly use hard-nosed tactics when dealing with reluctant witnesses, and their use alone does not constitute unreasonable coercion of a witness.[21] While we do not find unreasonable coercion in this instance, we evaluate such

---

[19] *Rogers v. United States*, 340 U.S. 367, 371 (1951).

[20] *See United States v. Merkt*, 794 F.2d 950, 962 (5th Cir. 1986).

[21] *Cf. Webb v. Texas*, 409 U.S. 95, 98 (1972) ("In the circumstances of this case, we conclude that the judge's threatening remarks, directed only at the single witness for

allegations on a case-by-case basis and reserve the right to hold otherwise when these or similar tactics are challenged under more compelling circumstances. Whether or not the court was correct to find Woods's asserted Fifth Amendment right not to testify inapplicable, which Martin has no standing to assert himself, its decision to ultimately compel Woods's testimony by contempt order after it found so does not constitute unreasonable coercion.

**B. Ground Two: Medina's Alleged Hearsay Statements**

As with Martin's first ground, we find no need to raise laches *sua sponte* to bar his second ground, because we hold that Martin has failed to satisfy *Strickland*'s prejudice prong. And again, although Judge Fine held otherwise, we review his holding de novo as a "mixed question of law and fact" not based on an evaluation of credibility and demeanor.[22] Assuming, without deciding, that Martin correctly identifies the contested testimony as hearsay[23] and counsel's failure to object to it as deficient performance, he still fails to establish how that failure prejudiced him. Martin bases this ground of ineffective assistance on trial counsel's failure to object to Medina's alleged hearsay testimony regarding Woods's "finger-pointing" and "accusatory" statements towards Martin, including asking Martin "why

---

the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment.").

[22] *See Ex parte Navarijo*, 433 S.W.3d at 567.

[23] TEX. R. EVID. 801(d) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

he did it."[24]  But the substance of Woods's statements had otherwise been presented to the jury by Woods himself when he testified against Martin despite his Fifth Amendment invocation, which we have already held Martin has no standing to assert.  In his proposed findings of fact and conclusions of law, which were submitted to and adopted by Judge Fine, Martin summed up Woods's testimony: "Martin struggled with Riley, shot Riley, took Riley's wallet, and gave the wallet to Woods."[25]  And given that the very harm courts seek to prevent by excluding hearsay testimony is the inability to confront and cross-examine a hearsay declarant—in this instance, Woods—Martin cannot show prejudice.[26]  Woods himself appeared at trial, was placed under oath, testified to the substance of the statements at issue, and was available for cross-examination.

Furthermore, considering the totality of Medina's testimony, Martin has not satisfied his burden under *Strickland* to show a "reasonable probability" that "undermine[s]

---

[24]  Applicant's Brief, at 20.

[25]  Judge Fine's Findings of Fact and Conclusions of Law, at 3.

[26]  *See, e.g.,* 2 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 801.1 (2d ed. 1993) ("It is plausible that the 'hearsay dangers'—faulty perception, faulty memory, accidental miscommunication, and insincerity—can be minimized, or exposed to the trier of fact, or both, by controlling the conditions under which human beliefs are used as evidence. The modern Anglo–American trial at common law represents one attempt to provide controlled conditions designed to minimize or expose defects in human belief evidence. Most commonly noted in this regard are the oath, the physical presence of the witness, and cross-examination.").

confidence in the outcome."[27]  Indeed, in his proposed findings of fact and conclusions of law submitted to and adopted by Judge Fine, Martin conceded that Medina's testimony regarding her observations of Martin and his self-inculpatory statements was "Admissible Non-Hearsay."[28]  And her testimony included Medina's observations that Martin left the apartment with Woods and a third man known only as "Psycho," returned looking scared, and left with the gun after Woods wiped it clean of fingerprints—all of which Martin conceded was reliable and relevant non-hearsay.[29]  It also included Martin's statement that he intended to get rid of the gun and Medina's belief that he had admitted to the shooting itself, which Martin also conceded were reliable and relevant non-hearsay.[30]  Given these uncontested portions of Medina's testimony, along with Woods's testimony to the substance of the contested portions and Riley's in-court identification, Martin has failed to undermine our confidence in the outcome of his trial.

**C. Ground Three: Lack of Mitigation Evidence at the Punishment Phase**

The State, however, did raise laches to bar Martin's claim that trial counsel failed to investigate and present mitigation evidence during punishment.  And even assuming without deciding that Martin satisfied his burden under *Strickland* to show that this alleged failure

---

[27]  466 U.S. at 694.

[28]  Judge Fine's Findings of Fact and Conclusions of Law, at 14–15.

[29]  *Id.* at 14.

[30]  *Id.* at 15.

was both deficient and prejudicial, we hold that it is barred by the equitable doctrine of laches.

We have long applied laches to bar habeas applications, but we recently changed the standard under which we evaluate it. In *Ex parte Carrio*, we implicitly adopted the federal laches standard, which required the State to:

1. "make a particularized showing of prejudice,"

2. "show that the prejudice was caused by the petitioner having filed a late petition," and

3. "show that the petitioner has not acted with reasonable diligence as a matter of law."[31]

But in *Ex parte Perez*, we abandoned that standard in favor of the common-law standard in order to "incorporate all forms of prejudice" viewed in light of the "totality of the circumstances."[32] Under the common-law standard, no "particularized showing of prejudice" is required, which allows courts to consider prejudice more "broadly."[33] The standard also expands the definition of prejudice to include "anything that places the State in a less favorable position," specifically including "prejudice to the State's ability to retry a defendant."[34] Furthermore, we evaluate proof of prejudice on a "sliding scale," and "the

---

[31] *Ex parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999).

[32] 398 S.W.3d 206, 208 (Tex. Crim. App. 2013).

[33] *Id.* at 215.

[34] *Id.*

longer a case has been delayed, the more likely it is that the reliability of retrial has been compromised."[35] This is especially true when applicants delay for "much more than five years after conclusion of direct appeals."[36] Indeed, although we declined to adopt a bright-line rule,[37] we recognized that a delay longer than five years "may generally be considered unreasonable in the absence of any justification for the delay."[38]

Martin delayed far longer than five years. He filed his application over thirteen years after he exhausted his direct appeals. Given our "sliding scale" approach, this unexplained delay guides our finding of prejudice to the State. Furthermore, even though we no longer require a "particularized" showing of prejudice, in his findings of fact and conclusions of law, Judge Patrick cited several examples where Martin's delay placed the State in a "less favorable position." Judge Patrick noted that the delay caused memory lapses in the testimony of both Martin's mother and his lawyer. Specifically, Judge Patrick found that Martin's mother could not recall:

- "whether or not she allowed [Martin] to stop attending school due to problems incurred at school";

- "what sort of criminal offenses [Martin] was committing before the primary case";

---

[35] *Id.* at 218.

[36] *Id.* at 217–18.

[37] *Cf. McCray v. Florida*, 699 So.2d 1366, 1368 (Fla. 1997) (presuming prejudice in post-conviction cases after five years).

[38] *Ex parte Perez*, 398 S.W.3d at 216 n.12.

- "why [Martin] was placed in the custody of TYC [Texas Youth Commission] before the primary case because 'it's been so long ago' and 'it's been a long time'";

- "what [Martin] did as a juvenile"; and

- "how she and the [Martin's] family responded to [Martin] committing a previous aggravated robbery that occurred before he was sent to TYC, due to the passage of time."[39]

Similarly, Martin's lawyer could not recall:

- "certain details of the [Martin's] case because of the passage of time";

- "whether he inquired into the history of mental illness in [Martin's] family";

- "whether he asked if any of [Martin's] relatives conducted any predatory acts upon [Martin]"; and

- "whether he talked about care arrangements the family had for [Martin]."[40]

Judge Patrick also found that Martin did not provide "any credible justification" for the thirteen-year delay in filing.[41] Based on these findings and given our general deference to the habeas court, particularly when its finding turns on an evaluation of witness demeanor and credibility,[42] Judge Patrick reasonably concluded that the State had been "materially

---

[39] Judge Patrick's Findings of Fact and Conclusions of Law, at 3–4.

[40] *Id.* at 4–5.

[41] *Id.* at 3.

[42] *See, e.g., Ex parte Castellano*, 863 S.W.2d 476, 485–86 (1993) ("While this Court is not bound by the findings of a habeas judge in a habeas corpus proceeding, where the findings are supported by the record, they should be accepted by this Court. Here, the findings of the habeas judge are supported by the record, thus they will be

prejudiced" because the "loss of memory by witnesses has hampered the ability of the State to respond and for this Court to accurately assess the merits of the grounds."[43]

Though the judge presiding over Martin's original habeas trial—Judge Fine—came to the opposite conclusion regarding the State's laches claim, Judge Patrick specifically refused to adopt those findings on remand because he did not have an "opportunity to assess the credibility of witnesses who testified" at the initial writ hearing.[44] And Judge Fine premised his legal conclusion on our prior understanding of laches and specifically cited to *Ex parte Carrio*.[45] But since Judge Fine's conclusion, we abandoned that understanding and replaced it with the common-law standard.[46] Therefore, Judge Fine's findings and conclusions are entitled to less deference than those of Judge Patrick, which guide our reasoning and our decision to hold Martin's third ground barred under the equitable doctrine of laches.

## IV. Conclusion

Because the bases of Martin's ineffective-assistance claims are either without merit or barred by the equitable doctrine of laches, we deny his requested relief.

---

accepted.") (citations omitted).

[43] Judge Patrick's Findings of Fact and Conclusions of Law, at 7.

[44] *Id.* at 3.

[45] Judge Fine's Findings of Fact and Conclusions of Law, at 29–31.

[46] *Ex parte Perez*, 398 S.W.3d at 208.

DELIVERED: November 19, 2014

DO NOT PUBLISH