# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00785-CR

**The State of Texas, Appellant**

**v.**

**Robert Luther Trevino, Appellee**

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 8866A, HONORABLE JOHN GAUNTT, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Robert Luther Trevino was charged with misapplication of trust funds in an amount
of $500 or more with an intent to defraud. *See* Tex. Prop. Code §§ 162.031(a) (setting out elements
of offense), .032(b) (specifying that offense is third-degree felony if person misapplies "$500 or
more . . . with intent to defraud"). Trevino and the State entered into a plea-bargain agreement in
which he agreed to enter a plea of nolo contendere to the charged offense in exchange for the State
agreeing to recommend that his adjudication of guilt be deferred and that he be placed on community
supervision. *See* Tex. Code Crim. Proc. art. 27.02(5) (explaining that plea of nolo contendere has
same legal effect as guilty plea). In accordance with that agreement, Trevino entered a plea of nolo
contendere, and the district court determined that there was sufficient evidence to support the plea.

During the punishment phase of the hearing, the State asserted that there was an
error in the pre-sentence investigation report. Specifically, the State mentioned that the restitution

amount listed in the report was approximately $8,000 and referenced a different victim than the one alleged in the offense at issue. *See id.* art. 42.037(a) (empowering trial court sentencing defendant to require defendant "to make restitution to any victim of the offense"), (m) (providing that "[a]n order of restitution may be enforced by the state or a victim named in the order to receive the restitution in the same manner as a judgment in a civil action"). Further, the State explained that it had previously provided the district court with a letter arguing that the evidence would show that "Quality Turf Farms of West Columbia, Texas, is still owed $1211.25 and that Mike Carter of North Texas Hydromulch Services is due and payable $84,325.20." In addition, the State contended that those amounts "are due and payable and . . . need to be paid as terms and conditions of probation." In response, Trevino urged that he did not owe the amounts proposed by the State.

At the end of the hearing, the district court pronounced that it was going to defer Trevino's adjudication and placed him on community supervision for ten years, and the district court also explained that it has "corrected the payments on the amount of restitution as follows: $1,211.25 to Quality Turf Farms; $84,325.20 to Mike Carter." Immediately afterwards, Trevino moved to withdraw his plea of nolo contendere and urged that he was relying on the amount of restitution listed in the pre-sentence-investigation report when he agreed to the terms of the plea bargain. The district court denied the request but granted Trevino the right to appeal "[i]n order to fix any problem." The district court's order of deferred adjudication is consistent with its oral pronouncement, including the amount of restitution owed.

Approximately two years after the district court deferred Trevino's adjudication, Trevino filed an application for writ of habeas corpus. *See id.* art. 11.072, § 1 (authorizing person

2

convicted of felony to seek relief from "an order or a judgment of conviction ordering community supervision"). In his application, Trevino requested that he be granted an out-of-time appeal in order to appeal the order deferring his adjudication and placing him on community supervision. *See Ex parte McCarty*, No. 03-14-00575-CR, 2015 WL 2089091, at *1, *4 (Tex. App.—Austin Apr. 29, 2015, no pet.) (mem. op., not designated for publication) (addressing habeas claim that applicant's attorney failed to file notice of appeal and concluding "that an out-of-time appeal is a permissible remedy under article 11.072"). Specifically, he argued that his plea "was not freely and voluntarily entered" and that "the evidence was legally insufficient to support conviction," and he also asserted that his "plea was entered based on his understanding of the restitution amount reflected in the" pre-sentence-investigation report, "which was far less than the amount that was ultimately" imposed. In addition, Trevino contended that he communicated his desire to appeal the district court's order to his attorney and that he did not learn that his attorney did not file the notice of appeal until after the deadline had passed. In response, the State filed a motion opposing the requested relief and arguing that Trevino's requested relief was barred by the doctrine of laches. *See Ex parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999) (explaining that doctrine of laches may serve as basis to deny habeas relief), *overruled in part by Ex parte Perez*, 398 S.W.3d 206, 213 (Tex. Crim. App. 2013). The State also filed an affidavit from Trevino's trial counsel in which his attorney averred that he had told Trevino on multiple occasions that he did not do appellate work and told Trevino to hire an appellate lawyer.

During the habeas hearing, Trevino testified that his trial attorney was also representing him in the civil matter, that he did not agree to the amount of restitution ordered, that he intended

3

to appeal the amount of restitution imposed, that his trial attorney told him that he was going to file an appeal, and that he thought that his attorney had filed an appeal. Further, Trevino explained that he was not informed that his trial attorney did not file an appeal until after the deadline for filing an appeal had run. In his testimony, Trevino discussed how he began searching for a new attorney approximately one month after being informed that his trial attorney did not file an appeal, how he met with the attorney who ended up representing him in the habeas proceeding months later, how he decided to wait on the outcome of the civil case before pursuing a challenge to the criminal conviction because he did not have enough money to pursue both cases at the same time, and how he pursued a challenge to the criminal conviction as soon as he had the financial resources to do so. In the hearing, Trevino also explained that although he was ready to proceed in the civil suit, the suit was dismissed because the other party, North Texas Hydromulch, did not have any money to pursue its claims, and he stated that he was unaware of any discussion about the civil case being dismissed because of the restitution ordered in the criminal case.

In addition, Trevino admitted into evidence two letters from his trial counsel to the district court in which the attorney requested findings of fact and conclusions of law so that "I can proceed with [Trevino's] appeal," a letter from his trial counsel to him in which his attorney stated that "I have completed my work in filing for the appeal on the criminal case," and a letter from his trial counsel to him that was mailed after the deadline to file the appeal had run explaining that the case was "in the appeal phase" but that his attorney did not practice appellate law and asking Trevino to come pick up the case file. During the hearing, the State did not call any witnesses to the stand but did argue that the requested relief was barred by the doctrine of laches.

4

After convening the hearing on the writ application, the district court issued the following relevant findings of fact and conclusions of law:

Findings of Fact

F. After applicant was placed on deferred adjudication, [his] attorney . . . filed a Motion for New Trial, and also filed a Request for Findings of Fact.

G. The court did not specifically rule on the Motion for New Trial, and it was overruled by operation by law.

H. After applicant was placed on deferred adjudication[, his] attorney . . . wrote two letters to the Court, and in both letters indicated he was pursuing an appeal.

I. No notice of appeal was filed by trial counsel.

J. Applicant did not learn that a Notice of Appeal had not been filed until February 24, 2014. At that time, the time for filing a notice of appeal had already expired.

K. Applicant retained Walter M. Reaves, Jr., to represent him in all habeas and appellate proceedings in July of 2015.

L. Applicant retained counsel to request an out of time appeal as soon as he was financially able to do so.

Conclusions of Law

B. Applicant's Notice of Appeal was not filed on a timely basis.

C. Applicant was entitled to appeal under the law, having received approval from the trial court to appeal.

D. Applicant desired to appeal from the judgment.

E. Applicant is entitled to the opportunity to file an out-of-time appeal. *See, e.g.*, *Ex parte Dorsey*, No. AP-75986, 2008 WL 4151929, *1 (Tex. Crim. App. Sept. 10, 2008) (not designated for publication).

5

Accordingly, the district court granted Trevino's application. After the district court made its determination, the State appealed the district court's order.[1] *See* Tex. Code Crim. Proc. art. 44.01(k) (authorizing State to appeal order granting habeas relief under article 11.072). We will affirm the district court's order.

## STANDARD OF REVIEW

Appellate courts review a trial court's ruling on a habeas claim under an abuse-of-discretion standard. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). "A trial court abuses its discretion when its ruling is arbitrary or unreasonable." *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd). But a trial court does not abuse its discretion if its ruling lies within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008); *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). Under that standard, we "review the record evidence in the light most favorable to the trial court's ruling." *Kniatt*, 206 S.W.3d at 664. Further, "[a]n applicant's delay in seeking habeas corpus relief may prejudice the credibility of the claim." *Id.*

An individual who has been convicted of a felony or misdemeanor may seek habeas "relief from an order or a judgment of conviction ordering community supervision." Tex. Code Crim. Proc. art. 11.072, § 1. "At the time the application is filed, the applicant must be, or have been, on community supervision, and the application must challenge the legal validity of . . . the conviction for which or order in which community supervision was imposed; or . . . the conditions

---

[1] After the State filed its notice of appeal, it filed a request with the district court for additional findings of fact and conclusions of law specifically pertaining to the doctrine of laches.

of community supervision." *Id.* § 2(b); *see also Ex parte Motta*, No. 13-13-00667-CR, 2014 WL 6602280, at *1 (Tex. App.—Corpus Christi Nov. 20, 2014, no pet.) (mem. op., not designated for publication) (addressing appeal of habeas application filed under article 11.072 by individual who pleaded guilty to offense "and was placed on deferred-adjudication community supervision"). In general, a post-conviction writ of habeas corpus may not be used to decide matters that could have been raised at trial and on direct appeal. *See* Tex. Code Crim. Proc. art. 11.072, § 3. To succeed under a post-conviction writ of habeas corpus, "the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd).

In habeas proceedings, "[v]irtually every fact finding involves a credibility determination," and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). For habeas proceedings under article 11.072, "the trial court is the sole finder of fact," and appellate courts afford "almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor." *Ex parte Ali*, 368 S.W.3d at 830; *see also id.* (stating that there is less potential for disregarding trial court's findings in article 11.072 appeal than in appeal under article 11.07 where court of criminal appeals "is the ultimate fact finder").

**DISCUSSION**

In its sole issue on appeal, the State urges that the district court erred by granting the relief requested because the doctrine of laches applied in this case and should have barred Trevino from pursuing an out-of-time appeal. *See Stansberry v. State*, 239 S.W.3d 260, 264 (Tex. Crim.

App. 2007) (explaining that out-of-time appeal may be granted through habeas relief and that if out-of-time appeal is granted, defendant is returned to point in appellate process when he can give notice of appeal and perfect his appeal); *cf. Palmer v. State*, No. 03-15-00525-CR, 2015 WL 5096318, at *1 n.1 (Tex. App.—Austin Aug. 28, 2015, pet. ref'd) (mem. op., not designated for publication) (noting in context of article 11.07 of Code of Criminal Procedure that remedy for untimely filed notice of appeal "is to file a post-conviction writ of habeas corpus").

The doctrine of laches is a common-law principle that prevents a party from asserting a claim when there was an unreasonable delay in presenting the claim and when the other party is prejudiced by the delay, and that principle applies in the habeas context. *See Ex parte Perez*, 398 S.W.3d at 210 & n.3. Among other "relevant circumstances," a trial court may consider "factors such as the length of the applicant's delay in filing the application, the reasons for that delay, and the degree and type of prejudice resulting from the delay." *Id.* at 217; *see also id.* (stating that there is "an inverse relationship" between extent of prejudice that must be shown and length of delay). When determining if the State has been prejudiced, a court may consider "anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant, so that [the] court may consider the totality of the circumstances in deciding whether to grant equitable relief." *Id.* at 215. A trial court may also consider "the diminished memories of trial participants and the diminished availability of the State's evidence, both of which may often be said to occur beyond five years after a conviction becomes final." *Id.* at 216; *see also id.* at 217-18 (explaining that "the longer an applicant delays filing his application, and particularly when an applicant delays filing for much more than five years after conclusion of direct appeals, the less evidence the State

8

must put forth in order to demonstrate prejudice"). Stated differently, a court may "reject the State's reliance on laches when the record shows that" the "delay was not unreasonable because it was due to a justifiable excuse or excusable neglect," that "the State would not be materially prejudiced as a result of the delay," or that "the applicant is entitled to equitable relief for other compelling reasons." *Id.* at 218.

Viewing the evidence presented to the district court in the light most favorable to the court's ruling and given that reviewing courts must afford almost total deference to a trial court's findings that are supported by the record, we must conclude that the district court did not abuse its discretion when it determined that Trevino wanted to appeal the district court's order deferring his adjudication, that Trevino's lawyer informed Trevino and the court that he was actively pursuing an appeal, that no appeal was filed, that Trevino did not discover that no appeal had been filed until after the deadline to file had run, and that Trevino hired an attorney to request an out-of-time appeal when he was financially able to do so. *See Ex parte McCarty*, 2015 WL 2089091, at *3 (explaining that claim that attorney did not timely file appeal fell under article 11.072 because it challenges legality of conviction and that out-of-time appeal may be granted as remedy); *cf. Ex parte Coy*, 909 S.W.2d 927, 928 (Tex. Crim. App. 1995) (concluding that applicant was "entitled to an out-of-time appeal" because his counsel failed to comply with procedural rule and, therefore, denied applicant "of an opportunity for meaningful appellate review").

Further, although the record does reveal that a year and several months passed between the time when Trevino discovered that his trial attorney had not filed a notice of appeal and when he filed an application for writ of habeas corpus, courts have typically held that the doctrine

9

of laches applied in the habeas context when the delays were significantly longer than the one at issue in this case. *See Ex parte Smith*, 444 S.W.3d 661, 663 (Tex. Crim. App. 2014) (noting delay of 10 years and remanding case to trial court to allow applicant opportunity to explain delay so that determination regarding whether laches applies could be made); *Ex parte Carrio*, 992 S.W.2d at 488-89 (holding application for post-conviction writ of habeas corpus in abeyance while trial court addressed issue of whether doctrine of laches prohibited relief requested fourteen years after conviction was imposed); *Ex parte Roberts*, No. 14-15-00338-CR, ___S.W.3d___, 2016 WL 1097731, at *3-4 (Tex. App.—Houston [14th Dist.] Mar. 10, 2016, pet. ref'd) (concluding that trial court did not abuse its discretion by denying habeas application where applicant waited thirteen years to file application); *Ex parte Gonzales*, No. 09-14-00250-CR, 2015 WL 690823, at *2 (Tex. App.—Beaumont Feb. 18, 2015, no pet.) (mem. op., not designated for publication) (deciding that trial court could have reasonably concluded "that the nine-year delay was unreasonable and unexplained, compromised the reliability of a retrial, and was prejudicial to the State"); *Ex parte Reyna*, 435 S.W.3d 276, 280 (Tex. App.—Waco 2014, no pet.) (determining that trial court did not err in denying relief where delay was twenty years long); *see also Ex parte Perez*, 398 S.W.3d at 216 n.12 (recognizing that "delays of more than five years may generally be considered unreasonable in the absence of any justification for the delay").

Moreover, when asserting that it has been prejudiced by the delay, the State does not argue on appeal and did not argue in the habeas hearing that the delay would negatively impact its ability to pursue the case, that the evidence that the State would need has been compromised due to the delay, or that the memories of those involved have diminished. Instead, the State argues on

appeal that it has been prejudiced because it should be able to rely on the finality of court judgments when seeking to recover restitution. Specifically, the State contends that granting habeas relief will undermine "the State's interest in being able to proceed with a judgment and order to include the efforts of probation departments to collect restitution . . . without concern that after such efforts have been made the very basis for those efforts may be subject to attack after the deadline for appeal."

Although the State does have a "broad interest in the finality of a long-standing conviction," *see Ex parte Perez*, 398 S.W.3d at 218, we note that this type of general interest is somewhat lessened in this case given the amount of delay actually at issue and given the absence of any showing that the State's ability to pursue this particular case had somehow been prejudiced. Further, we can see no reason to conclude that the fact that this case involves restitution to the alleged victim should, on its own, compel a determination that the State has somehow been prejudiced.

In addition to arguing that it has been prejudiced in the manner described above, the State also refers to the companion civil case between North Texas Hydromulch, which was owned by Carter, and Sprinkleman, LLC, which was owned by Trevino, and argues that Trevino was aware of the connection between the suits and even informed the district court that if the jury in the civil suit returned a damages award that was less than the amount of restitution ordered, "we would like for [the district court] to take [that] in[to] consideration and maybe suspend some of that payment." Further, the State highlights that Trevino waited ten months after the civil suit had been dismissed with prejudice to file his application for writ of habeas corpus. In light of the preceding, the State contends that if the relief is granted, "the dismissal of the companion civil case in reliance of finding and judgment of restitution [will have] harmed the overall interest of society," including the interest

11

of the victim in this case, by affecting "the ability [of] courts to act and rely on the finality of court findings and orders that have passed the deadlines for appeals" and by affecting the ability of citizens "to rely on orders of the courts for relief and protection." Finally, the State urges that the State's and society's interests "would not have been materially prejudiced" if Trevino had sought relief before the civil suit was dismissed because "the parties to the civil suit could still [have] protect[ed] their interests."

To the extent that the State is asserting that its interests and those of its citizens would be prejudiced if the requested relief were granted because the companion civil suit had already been dismissed in reliance on the amount of restitution ordered in this case, we have been unable to find any support for the proposition that this type of alleged prejudice is a relevant consideration when determining whether the doctrine of laches should prevent an applicant seeking habeas relief from obtaining an out-of-time appeal. *See Ex parte Saenz*, No. WR-80,945-01, ___ S.W.3d ___, 2016 WL 1359214, at *5 (Tex. Crim. App. Apr. 6, 2016) (explaining that "the doctrine of laches is intended to address the broader interests *of the criminal-justice system*, such as prejudice to the State's ability to prosecute a defendant or to respond to allegations due to the loss of evidence, rather than being focused on the ills of repetition and wasted resources caused by an applicant's failure to act more quickly in raising his claims" (emphasis added)). Moreover, nothing in the record in this case indicates that the civil suit was dismissed because of or in response to the judgment in the underlying criminal case. On the contrary, as discussed above, Trevino testified that the civil suit was dismissed because North Texas Hydromulch did not have the funds to pursue the suit, and Trevino related that he was unaware of any discussions indicating that the suit was dismissed because a judgment had been issued in the criminal case.

12

For all of these reasons, we must conclude that the district court did not abuse its discretion by rejecting the State's assertion that Trevino's claim was barred by the doctrine of laches or by granting Trevino the habeas relief that he requested. Accordingly, we overrule the State's issue on appeal.

## CONCLUSION

Having overruled the State's issue on appeal, we affirm the district court's order granting Trevino's application for writ of habeas corpus.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Pemberton

Affirmed

Filed:   June 23, 2016

Do Not Publish

13