ACCEPTED
03-16-00368-CR
13161216
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/10/2016 10:29:38 PM
JEFFREY D. KYLE
CLERK

# TEXAS COURT OF APPEALS
# THIRD DISTRICT, AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/10/2016 10:29:38 PM
JEFFREY D. KYLE
Clerk

## NO. 03-16-00368-CR

### Daniel Albert Talamantes, Appellant

### v.

### The State of Texas, Appellee

### FROM COUNTY COURT AT LAW #7
### TRAVIS COUNTY, TEXAS
### CAUSE NO. C-1-CR-06-723321
### HON. ELISABETH EARLE, JUDGE PRESIDING

# REPLY BRIEF OF THE APPELLANT

Mr. Bristol C. Myers
Texas Bar No.: 24009734
1411 West Avenue, Suite 200
Austin, Texas 78701
512-478-2100
512-478-2107 fax
bristol.myers@gmail.com
Attorney for the Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................2

INDEX  OF AUTHORITIES……...………….……….…...….3

ARGUMENT…………………………………………..…….4

CONCLUSION….………………………….………………18

CERTIFICATE OF SERVICE………………..………………19

CERTIFICATE OF COMPLIANCE………………...……..…….19

# INDEX OF AUTHORITIES

## United States Supreme Court

*United States v. Cronic,*
466 U.S. 648 (1984)…………………………………………………………11

## Texas Court of Criminal Appeals

*Ex Parte Perez,*
398 S.W.3d 206 (Tex.Crim.App. 2013)……………………...…4

*Lomax v. State,*
233 S.W.3d 302 (Tex. Crim. App. 2007)……………………………8

## Texas Courts of Appeals

*Ex Parte Bowman,*
483 S.W.3d 726 (Tex.App.-Houston [1st Dist.] 2016)……………6

*Talamantes v. State,*
No. 03-07-00668-CR (Tex. App.—Austin, 2009)………………..…8

## Other Authorities

*"Performance Guidelines for Non-Capital Criminal Defense Representation,"* Standing Committee on Legal Services to the Poor in Criminal Matters, adopted by the State Bar Board of Directors, January 28, 2011……………….……………13-14, 16

# ARGUMENT

**LACHES—The State still has an actual burden to prove prejudice stemming from unreasonable delay, and its reliance on the mere passage of time is insufficient to meet that burden.**

### A. The State still has a burden of proving prejudice.

There is no rebuttable presumption of prejudice to the State.[1]

*Perez* broadened the scope of facts for a court to assess prejudice, but it did not absolve the State of having to prove prejudice to benefit from the laches defense.[2] The burden of proving prejudice remains on the State. Proof of mere passage of time is insufficient to raise laches as a defense.[3]

### B. The prejudice claimed by the State is imaginary.

The State's perception of prejudice hangs on the difficulty of re-trying Mr. Talamantes if this conviction were overturned.[4]

---

[1] *Ex Parte Perez*, 398 S.W.3d 206, 210 (Tex.Crim.App. 2013)

[2] *Id.* at 215 "We reaffirm *Carrio's* holding…alter[ing it]…only to the extent that we now apply Texas common law, rather than the federal standard to define the parameters of the doctrine of laches in Texas habeas corpus cases."

[3] *Id.* at 219

[4] State's Brief, pp. 15-19,

The State stipulated that the arresting officer was still with the Austin Police department,[5] and the obvious presumption is that he would be available to testify at a re-trial. However, bearing the burden of proof of prejudice, the State failed to call the officer at the habeas hearing to ask whether or not his testimony at a re-trial would be adversely affected by the delay. Perhaps the State was fearful that the ordinary course of business in DWI trials would come to light on the record.

The State is in no worse position for a re-trial in this case than it is on the trial of any other DWI case. The State's assertions that the officer would be "skewered" or "berated"[6] for relying on his report or the video ignores the reality of how police and prosecutors have to prepare for DWI trials.

There were over 49,000 crimes reported in the City of Austin in 2007, not including drug offenses, and DWIs.[7]

---

[5] RR2 p. 3

[6] State's Brief pp. 8,17

[7] Austin Police Department Annual Crime and Traffic Report: 2008 Final Report. http://www.austintexas.gov/sites/default/files/files/Police/ 2008_crime_and_traffic_report_(reissued)_042210.pdf

There have consistently been over 3000 DWI arrests annually in Austin since the mid-1980's, and in recent years that number has exceeded 6,000 DWI arrests annually.[8] There are currently 2300 employees of the Austin Police Department,[9] though not all of those are police officers, not all police officers work patrol, nor are all patrol officers working at night when more calls come in. Factoring in that a police officer's job also entails writing traffic tickets, responding to noise complaints, burglar alarms, and other calls for service that do not result in a reported crime, there is no way (barring a significantly unique experience with a subject) that an officer is going to remember the fine details of a DWI arrest made the month before.

This is why police reports and patrol car videos are made, and the reality is that officers have to rely heavily on those reports and videos every time they testify anyway.[10]

---

[8] "Evaluation of the Austin Police Department DWI Enforcement Unit," p. 12, fig. 3-1, U.S. Dept. of Transp. National Traffic Safety Administration. (August 2003); http://kxan.com/investigative-story/thousands-of-dwi-arrests-in-austin-many-not-prosecuted/

[9] http://www.austintexas.gov/department/police

[10] *Ex Parte Bowman*, 483 S.W.3d 726, 737-738 (Tex.App.—Houston [1st Dist.] 2016)

The parallels between this case and the *Bowman* case have been briefed by both sides. The State suggests that it is more prejudiced here than in *Bowman* because Mr. Talamantes had no trial and, therefore, no trial transcript to further help refresh the memory of his arresting officer. To the contrary, the State is at a greater advantage without a transcript because defense counsel has zero ability to impeach the officer's testimony by prior inconsistent statement—a trial strategy far more effective in DWI cases than "skewering and berating" an officer for simply continuing to do his job between the time of arrest and the date of trial.

**C. The State's argument of unreasonable delay in filing the application for habeas corpus relief misstates and misinterprets the facts.**

As an initial matter, the State falsely claims that Mr. Talamantes attacked the validity of this conviction on direct appeal in his murder case.[11]

---

11 State's Brief pp. 1, 4, 7

The State then uses its own falsehood to suggest that Mr. Talamantes had been aware of the potential to attack this conviction for a long time. The truth is, on the direct appeal of the murder, Mr. Talamantes continued to press that the DWIs should not have been used as felony-murder predicates, despite Court of Criminal Appeals precedent.[12]

The State claims overturning the conviction in this case prejudices the outcome of the felony-murder prosecution. This court, like the trial court, should confine itself to addressing the claims raised in this case. Taking a "totality of the circumstances" approach to determining prejudice in the laches context is not a license to consider the irrelevant or the obscure. Moreover, any prejudice to the State to the felony-murder judgment is speculative.[13]

---

[12] *Talamantes v. State*, No. 03-07-00668-CR (Tex. App.—Austin, 2009); *Lomax v. State*, 233 S.W.3d 302 (Tex. Crim. App. 2007)

[13] Every morsel of prejudice claimed by the State in this case is based on speculation, given the State's failure to procure the testimony of Mr. Talamantes' arresting officers to at least *attempt* to prove some actual prejudice.

A subsequent 11.07 writ would have to be granted, an uncertainty in itself, followed by a recommendation to grant relief, followed further by a separate review of any recommended relief.

On the other hand, if a "totality of the circumstances" approach is taken toward prejudice, then it should also apply to an assessment of the reasonableness of the delay in filing for habeas corpus relief.

Mr. Talamantes is not a man who has slept on his rights. He has been in constant litigation since he was found guilty of murder, of which, this conviction was an essential element. It took over 4 years—from filing date to Court of Criminal Appeals ruling—to finally resolve the 11.07 writ in Mr. Talamantes' murder case.

The State misconstrues the tenor of Mr. Talamantes'

testimony: it is not that Mr. Talamantes had no idea what

habeas corpus is[14]; it is that he was unaware that this particular

claim for relief existed.[15] He never knew that there was a DWI

video in this case, did not know to ask before he entered his

plea in this case, and his appointed lawyer never suggested it.

He was never told by his lawyer in the felony-murder case, nor

did any of his prior post-conviction lawyers suggest, that he

should re-examine the validity of his DWI convictions.

It is subjectively and objectively reasonable to expect that

clients will rely on their lawyers' advice. Lawyers are hired or

appointed because of the expectation that lawyers are more

knowledgeable about the law, and therefore are beneficial to

their clients. It is also subjectively and objectively reasonable for

a person facing a 50-year sentence for murder to focus on

challenging that conviction.

---

[14] State's Brief p. 13-14

[15] RR2 pp. 79-80, 84-85

10

## DENIAL OF COUNSEL—The issue was properly preserved, and the State has no good answer for it.

### A. The issue is raised by the application for habeas corpus.

> "In the absence of a reliable alcohol concentration, DWI is essentially a crime based on opinion. Defense counsels' total reliance on the opinions of police in Talamantes' cases **deprived him of any meaningful adversarial testing** of the prosecution's cases against him. Therefore, in both of his DWI cases, Talamantes was **denied his rights to counsel**…"[16],[17]

Additionally, both sides presented evidence, not just about appointed counsel's individual performance, but about the overall jail call process, because in this case proof of constructive denial and ineffective assistance was entangled in the same set of facts.

---

[16] CR p. 21

[17] Deprivation of "meaningful adversarial testing" is taken from *United States v. Cronic*, 466 U.S. 648, 659 (1984) which the State cites in its own brief (p. 20) as the test for determining a constructive denial of counsel.

## B. The State is trying to cover up the Travis County "meet & plead" jail call system.

The State's Brief provided no answers to the systemic failing of the Travis County jail call system that results in constructive denial of counsel. When asked what he did for Mr. Talamantes that Mr. Talamantes could not have done for himself, appointed counsel barely had an answer, eventually coughing up that he rendered advice on "what the risks of trial might entail."[18] This particular lawyer was ill-suited for that task (see below), but even he admitted he could not effectively provide that advice in a DWI without the video.[19]

The State's brief had no counter for the fact that Mr. Talamantes and similarly situated defendants are forced to decide to go to trial: 1) without having seen the video first or, 2) after suffering additional pretrial incarceration in order to obtain the video and make a fully-informed decision.

---

[18] RR2 p. 71

[19] RR2 p. 72

Instead of addressing these systemic problems in its brief, the State attempts to shift appointed counsel's duty to conduct discovery onto Mr. Talamantes, suggesting that it was up to Mr. Talamantes to divine the existence of the patrol car video. The State had ample opportunity to ask Mr. Talamantes if he actually knew there was a patrol car video on the date he entered his plea, but chose not to.[20] It does not matter…

It was counsel's duty to independently explore all avenues leading to relevant facts, ***regardless of the client's wish to admit guilt,*** and determine whether the charges are factually and legally correct.[21] ***Under no circumstances*** should counsel have recommended acceptance of a plea agreement unless appropriate investigation of the case had been completed,

---

[20] RR2 pp. 76-115

[21] Guideline 4.1A "Performance Guidelines for Non-Capital Criminal Defense Representation," Standing Committee on Legal Services to the Poor in Criminal Matters, adopted by the State Bar Board of Directors, January 28, 2011.

including evidence likely to be introduced at trial.[22],[23]

The State suggests on page 23 of its brief that appointed counsel spent two whole days working on Mr. Talamantes' case. The State intends to create a false impression of diligence on the part of appointed counsel. Appointed counsel in this case, appointed counsel in Mr. Talamates' companion case, and Mr. Talamantes himself all describe their jail call experience as being one in which the initial meeting and all the work happen in a single court setting.[24]

The State also points to appointed counsel's 40 years of experience[25] to create a false impression of competence on the part of appointed counsel in this case. In truth, nobody would ever hire the man, and he has essentially no DWI trial

[22] *Id.* at Guideline 6.1A.

[23] One of the "foremost" purposes of the Guidelines is promotion of professionalism in the representation of indigent defendants. Peruse the Guidelines. Absorb the method and process they contemplate. The Guidelines are what "Counsel" is supposed to be in the Constitutional sense of the word. Then contrast those standards with what Mr. Talamantes and his lawyers testified about the Travis County jail call operation: **meet and plead in sixty minutes or less.**

[24] RR2 pp. 14, 47-49, 77-79, 83-85

[25] State's Brief p. 6

experience (that he can remember).[26] Everybody has to start somewhere, but forty years with virtually no retained clients is another way of saying there is no market value for the services he offers. Forty-years in criminal law with no trials is as non-adversarial as a potted plant.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

**A. The State issues Mr. Talamantes a Bar Card.**

As noted above, in order to excuse the deficient performance of appointed counsel who failed to obtain Mr. Talamantes' patrol car video, the State argues that it was up to Mr. Talamantes to know the video existed and to urge his lawyer to get it. It was counsel's job to conduct full discovery before demanding that Mr. Talamantes decide between a plea or a trial, and it is the justice system's job to make sure appointed counsel can do that without penalizing the defendants who

---

[26] RR2 p. 40

appear within it.[27]

**B. A credibility finding is only as good as it is specific.**

The State argues that Mr. Talamantes cannot show prejudice because the trial court found him not credible.[28] Of course, the trial court found his lawyers' testimony credible. The trial court did not make credibility findings specific to the issues in this case. A general finding of "not credible" does not mean that the truth is the opposite of everything that witness says.

Mr. Talamantes gave his name for the record. Was this not credible? What about his education? His admissions regarding his criminal history? Mr. Talamantes' description of his jail call experience, particularly the courtroom setting and the relatively quick disposition of cases is actually corroborated by the testimony of his lawyers.

Despite the trial court's generalized finding on his

---

[27] See again the Performance Guidelines, Note 21, *supra.* As part of the justice system the State Bar set standards for the performance of counsel. As part of the justice system, the Third Court of Appeals should remove institutional impediments to those standards being met.

[28] State's Brief p. 27

credibility, Mr. Talamantes' <u>specific</u> credibility in testifying that he would have proceeded to trial in this case is corroborated by the videos of both arrests[29], particularly when compared to one another, coupled with his admission that he would NOT have gone to trial in his first DWI.

**C. The State assails its own Laches argument by overstating the strength of its DWI case.**

The State concedes that Mr. Talamantes does not need to prove he would have been acquitted or even merely had a better outcome had he gone to trial.[30] Even so, Mr. Talamantes had a good chance of either a better offer, better outcome, or an acquittal in this case, given how he looks and sounds on his video. A decision to reject the 90-day offer would have been rational.

All of the evidence the State now lists to support a conclusion that it would have been irrational to reject a 90-day

---

[30] State's Brief p. 28

plea offer and face a jury in Travis County (of all counties),

remains readily available for presentation to a jury now,

unimpaired by the passage of time.

## CONCLUSION

Appellant asks the reviewing court to reverse the habeas

court's ruling on the relief requested by the Appellant, set aside

Appellant's no contest plea and resulting conviction, and

remand the case to the trial court for meaningful adversarial

testing of his DWI charge.

Respectfully submitted,

/s/ Bristol C. Myers
Bristol C. Myers
Texas Bar No.: 24009734
1411 West Avenue, Suite 200
Austin, Texas 78701
512-478-2100
512-478-2107 fax
bristol.myers@gmail.com
Attorney for the Appellant

## Certificate of Service

My signature certifies that on October 10, 2016, a true and correct copy of this brief was served on all parties available through the e-file/e-service system.

/s/ Bristol C. Myers
Bristol C. Myers

## Certificate of Compliance

My signature certifies that, in accordance with Texas Rule of Appellate Procedure 9.4(i)(3), that the word count of this brief in its entirety as calculated by the word processing system on which this brief was written is 2,866.

/s/ Bristol C. Myers
Bristol C. Myers