

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00008-CR

———————————————

Ex parte Cynthia Dianne Noble

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 55,593-C

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Cynthia Dianne Noble appeals the trial court's denial of her application for writ of habeas corpus, alleging that her 2016 guilty plea was involuntary due to the ineffective assistance of her counsel. Because the trial court did not abuse its discretion by denying her application, we affirm the trial court's order.

### II. BACKGROUND

In March 2015, Noble was indicted for first-degree-felony theft. *See* Act of June 17, 2011, 82nd Leg., ch. 1234, 2011 Tex. Gen. Laws 3301, 3308 (amended 2017) (current version at Tex. Penal Code Ann. § 31.03). In October 2016, Noble entered a plea of guilty pursuant to a plea bargain. At the plea hearing, the trial court gave Noble the statutorily required admonishments and found that she had entered her guilty plea freely and voluntarily and that she was aware of the plea's consequences. The trial court concluded that the evidence substantiated her guilt and accepted her guilty plea; however, the court deferred adjudicating her guilt and placed her on community supervision for a period of ten years. After a separate two-day hearing regarding restitution, the trial court set the restitution amount at $1,402,115 to be borne jointly and severally by Noble and her two codefendants.

In August 2020, the State petitioned to revoke Noble's community supervision and adjudicate her guilt because she had failed to make restitution payments, to report

to her supervising officer, to submit to a drug test, and to pay a urinalysis fee.  In November 2020, Noble filed a verified application for writ of habeas corpus, alleging for the first time that her plea was not entered voluntarily or knowingly and that she would not have entered into the plea had she understood the consequences and received effective assistance from her attorney.

## A.  Noble's allegations

Noble's claims related to two attorneys: her initial, court-appointed attorney, Spencer Rowley, and her later, retained attorney, Roger Williams.  She claimed that in 2015, Rowley had told her that the prosecutors "knew that she didn't do it" but wanted her testimony against someone else who they believed was responsible.  She had insisted she would go to trial.  She admitted that when Williams took over the case after a few months, he filed pretrial motions and compiled discovery documents for Noble's review.

In October 2016, Noble appeared at a pretrial hearing with Williams, her counsel whom she had retained in June 2015.  According to Noble, the following took place:

> While waiting, Roger Williams asked [Noble] to come out of the courtroom into a conference room.  At that point, her attorney said that she had papers to initial and sign.  [Noble] then asked Roger Williams what the papers were that he requested her to sign.  She was told that there was a plea bargain being offered that would result in her being placed on up to ten (10) years deferred adjudication community supervision.  [Noble] advised Roger Williams that she did not commit the acts alleged in the Indictment and she was not going to sign.  At this point, Roger Williams was agitated and told her that the District

3

Attorney would be very upset if she didn't sign the papers. He then told [Noble] that she would die in prison. She was advised that the District Attorney would make an example of her. At this point, Roger Williams, slammed his hand on the desk and said that he would not represent her if this went to trial. [Noble] had already paid Roger Williams and had no other alternatives to hire attorneys at th[is] late date. Believing that she was helplessly trapped, [Noble] signed the paper[]work provided to her by her attorney believing that she had no alternative. [Noble] never believed that she committed or was a party to any of the acts alleged in the Indictment against her. [Noble]'s plea of guilty to the indictment was involuntary and solely the result of the actions of her attorney which was conduct below the standard of competence demanded of attorneys in criminal cases.

## B. The State's Response

The State answered Noble's application, attaching almost 200 pages of supporting documents, including reporter's records from the plea-acceptance hearing, the two-day restitution hearing, and a brief March 2017 compliance hearing; Noble's signed judicial confession, waiver of rights and consent to stipulation of evidence, court admonishments, consequences-of-supervision-violation acknowledgment, and waiver of appeal; the order imposing community-supervision conditions; an affidavit by Anthony Bates, the prosecutor of the theft charges; an affidavit by Williams; and an obituary showing that Rowley had died in May 2020.

In Williams's affidavit, he recalled preparing for trial by discussing the case with Noble, preparing discovery documents for her, filing pretrial motions, and negotiating the plea bargain with the State. He denied that he expected the case would be dismissed, that he represented to Noble that the case was "almost over," that he slammed his hand on a table, that he became agitated, that he told her she would die

4

in prison, that the District Attorney would make an example of her, or that he would not represent her if she chose to go to trial. Though he did not recall his specific discussions with Noble regarding her plea, he explained that his standard practice was "to explain the consequences of each document that a client signs when a client enters a guilty plea" and he had no reason to believe he varied from that practice in this case. He opined, based on his conversations with Noble and observations of her entering her plea, that her plea was "altogether free and voluntary." He observed that at no point during the two-day restitution hearing and a short hearing regarding an amended restitution order did Noble ask to withdraw her plea or otherwise indicate that her plea had been involuntary. He further averred that at no time after entering her plea did she tell him she wished to withdraw it.

In Bates's affidavit, he recalled Williams's filing multiple pretrial motions, including a motion for community supervision and two agreed motions for continuances of trial dates because the parties were involved in plea-bargain negotiations. He described Williams as "actively and zealously advocat[ing] for his client." He observed, from the hearing transcripts, that Noble never attempted to withdraw her plea after entering it. He also opined that, "[i]n all [his] interactions with Williams, [he] found [Williams] to be a competent, effective, and diligent advocate."

## C. The Trial Court's Ruling

The trial court considered the parties' filings and denied the application, entering extensive findings of fact and conclusions of law. We have summarized those relevant to this appeal as follows:

- Noble affirmed at the October 2016 plea hearing that she understood the charges against her and applicable range of punishment, that she signed and understood the plea-bargain documents, and that she was pleading guilty because she was guilty and for no other reason.

- Noble testified during the restitution hearing without claiming that her guilty plea was involuntary, that she did not understand the plea-bargain paperwork, or that she was innocent and wished to withdraw her plea.

- Similarly, in a March 2017 hearing, she did not object that her plea was involuntary, that she did not understand the plea-bargain paperwork, or that she was innocent and wanted to withdraw her plea.

- Noble waived her right to appeal and did not pursue an appeal.

- Williams's and Bates's affidavits were credible, the factual assertions in those affidavits were true, and Noble's assertions were not credible and were untrue.

- Rowley did not represent Noble at the time she pleaded guilty; therefore, Noble could not satisfy her burden to show that anything occurring during his representation of her affected the voluntariness of her plea.

- Williams's affidavit established that he compiled discovery for Noble, filed pretrial motions, and actively engaged in plea negotiations.

- Williams's affidavit established that he had not told Noble that he expected the case to be dismissed, that she would never go to trial, that the District Attorney would be upset if she did not plea and would make an example of her, that she would die in prison, or that he would not represent her if her case went to trial; and that he had not become agitated on the day the plea was entered or slammed his hand down on the table.

6

- Williams's affidavit established that his standard practice is to explain the consequences of each plea document and he did not vary from that practice with Noble.

- Williams's affidavit established that his explanation at the plea hearing as to why Williams was pleading guilty—"for no other reason other than the plea bargain that we entered into"[1]—was to explain that the court was inquiring if there were any other inducements for the guilty plea.

- Williams's affidavit established that Noble never informed him that she wanted to withdraw the plea.

- Williams's affidavit established that Noble entered into the plea bargain "for the grant of leniency, freely and voluntarily."

- Bates's affidavit established that "Williams was a zealous and active advocate for Noble."

The trial court concluded (1) that Noble had not met her burden to show that Rowley's or Williams's performances were deficient, (2) that any deficiency in Rowley's performance could not have prejudiced Noble because he did not represent her at the time of her plea, (3) that laches barred Noble's attempt to claim Rowley's performance had been deficient, (4) that Noble's plea had been knowing and voluntary, and (5) that but for any deficient performance, Noble would not have pleaded guilty and insisted on a trial.

---

[1]Williams made this comment after the trial court inquired whether Noble was pleading guilty because she was guilty and for no other reason. In Williams's affidavit, he explained, "Sometimes defendants are confused by that question because they do not understand the judge is not asking about the plea bargain but if there were any other inducements."

### III. DISCUSSION

We review the trial court's denial of habeas relief for an abuse of discretion, and we view the facts in the light most favorable to the trial court's ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). The applicant has the burden to prove her allegations by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). Generally, sworn allegations of the applicant are not sufficient proof alone. *Ex parte Torres*, 483 S.W.3d 35, 47 (Tex. Crim. App. 2016); *Ex parte Empey*, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).

A guilty plea must be entered knowingly, intelligently, and voluntarily because it forfeits three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the right against self-incrimination. *Kniatt*, 206 S.W.3d at 664. To be "voluntary," the plea must be the expression of the defendant's free will and must not be induced by threats, misrepresentations, or improper promises. *Id.* When, as here, the applicant challenges the voluntariness of her plea by contending that her counsel was ineffective, we evaluate whether (1) counsel's advice was within the range of competence demanded of attorneys in criminal cases and, if not, (2) there is a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

A defendant's sworn representation that her guilty plea is voluntary "constitute[s] a formidable barrier in any subsequent collateral proceedings." *Kniatt*,

8

206 S.W.3d at 664 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 1629 (1977), which also holds "[s]olemn declarations in open court carry a strong presumption of verity")). Similarly, an applicant's delay in seeking habeas relief may prejudice her claim's credibility. *Id.*

In this case, Noble's application founded on Williams's performance was predicated on her averments that her plea was involuntary as a result of Williams's supposed promises the case would not go to trial and of his threats to withdraw from his representation. The trial court was in the best position to weigh her unsubstantiated allegations against her past behavior—signing the plea documents, representing to the trial court the voluntary nature of her plea, and making no efforts to withdraw her plea until facing revocation—and to assess the credibility of Bates and Williams. *See Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) ("[T]he trial judge is in the best position to assess the credibility of witnesses."); *Kniatt*, 206 S.W.3d at 664 (holding trial court was justified in concluding the applicant was sincere when pleading guilty). Williams and Bates both recounted their independent recollections of the events leading to the plea bargain and afterward (the restitution hearing and the hearing providing Noble with the amended order), and their recollections were substantiated by the reporter's records of those hearings. The trial court was also allowed to consider the fact that Noble waited until she was facing the possibility of adjudication and a life sentence to assert involuntariness. *See Kniatt*, 206 S.W.3d at 664–65 ("We also note that the trial court could believe or disbelieve

9

any of the witnesses and could properly take into account the fact that appellant made no claim of an involuntary plea until after the State filed its motion to proceed with an adjudication of guilt."). This evidence supports the trial court's conclusions that Noble's plea was voluntarily made and that Williams's performance was not deficient.

The trial court also did not abuse its discretion by concluding that Rowley's performance cannot be considered deficient because he did not represent her at the time she entered her guilty plea. Noble's assertion that early in the case, Rowley advised her that the case would not go to trial does not meet the burden of establishing that her guilty plea (entered more than a year after Rowley's withdrawal) was involuntary due to his advice. *See Moody*, 991 S.W.2d at 858.

Even if we were to overlook this substantive flaw in her complaints against Rowley, the trial court did not abuse its discretion by determining that any such complaints were barred by laches. Laches operates to bar a claim where the applicant neglected to assert the claim and, taken together with a lapse of time and other circumstances, the failure causes prejudice to an adverse party. *Ex parte Perez*, 398 S.W.3d 206, 210 (Tex. Crim. App. 2013). Whether laches applies is a case-by-case inquiry determined by the specific, surrounding circumstances. *Id.* at 216–17. Factors relevant to the determination include the length of the applicant's delay in filing the application, the reasons for the delay, and the degree and type of prejudice resulting from the delay. *Id.* at 217.

Noble provided no explanation for her four-year delay in claiming Rowley's ineffective assistance resulted in her involuntary plea. The trial court was entitled to conclude that her delay was unreasonable and her claims were precipitated by her facing a possible life sentence upon adjudication. Additionally, the trial court found that the State was prejudiced by her unreasonable delay in asserting an ineffective-assistance claim against Rowley because his death meant he could not respond to her claims. Rowley's death is uncontroverted, and the death of a trial participant is considered an important factor in the application of laches. *See Ex parte Westerman*, 570 S.W.3d 731, 734 (Tex. Crim. App. 2019) (mem. op.) (Yeary, J., dissenting); *Perez*, 398 S.W.3d at 211. This is particularly true where, as here, the applicant has failed to show any nexus between counsel's supposedly bad advice and her guilty plea over a year later with different counsel. *See Moody*, 991 S.W.2d at 858. Considering the totality of the circumstances, the trial court was justified in applying laches to bar Noble's claim against Rowley.

Based on the evidence in the record before us, we cannot conclude that the trial court abused its discretion by denying Noble's application for a writ of habeas corpus. We therefore affirm the trial court's order.

## IV. CONCLUSION

Having held the trial court did not abuse its discretion, we affirm its order denying the application for habeas corpus relief.

11

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 8, 2021